## THE BANK OF MONTREAL
## v.
## WILLIAM DEWAR.

1. STATEMENT.—Appellee being in possession of a sum of money, permitted one W. to take the same to the bank for deposit. W. deposited the money in his own name, receiving a certificate of deposit therefor, the bank having knowledge that the money belonged to appellee. He then indorsed the certificate of deposit and delivered it to appellee, who placed it among his own papers. Afterwards, during the absence of appellee, W. obtained possession of the certificate of deposit, erased the indorsement, and presenting it to the bank drew the money thereon, and passed it to his private bank account. Appellee learning what had been done, after some hesitation consented to allow W. to retain the money as a loan, and for a period of years thereafter rendered to W. statements of interest due and payments made by

W. thereon. Upon the insolvency of W., appellee brought trover against the bank for the money deposited.

2. DEALING WITH ONE CLOTHED WITH APPARENT AUTHORITY.—Where the owner of property holds out another, or allows him to appear as the owner, and innocent parties are led into dealing with one having such apparent ownership or authority, they will be protected in so doing. So, where one entrusts another with money to deposit in a bank, the bank having knowledge of the true ownership, but no direction as to the manner of making the deposit, it will be warranted in receiving such money and giving a certificate therefor in the name of the person presenting the money for deposit.

. 3. RATIFICATION—CONVERSION BY AGENT.—It was the duty of the owner of the money, on receiving notice of the manner in which the deposit was made, to dissent thereto within a reasonable time, and failing to do so he will be held to have ratified the same. Not having repudiated the act of his agent, he cannot, after the lapse of several years, object that the bank subsequently paid over the money to the agent upon the presentation of the certificate of deposit, the bank having no knowledge that the agent's possession of such certificate was wrongful and tortious.

4. NOTICE TO BANK—ERASURE OF INDORSEMENTS.—Mere knowledge on the part of the bank that the money belonged to appellee, is not sufficient under the circumstances to charge it with notice that the money should be paid only to appellee. Nor was it put upon inquiry because of the erasure of indorsements upon the back of the certificate. The payee of negotiable paper having assigned the same by indorsement, has the right on its return to him to strike out such indorsement, and such erasure subjects the paper to no suspicion.

5. WAIVER OF TORT.—The money having passed into the hands of W., it was competent for appellee to waive the tort and treat the transaction as a loan to W., and when this was done the possession of W. became rightful, and the act of the bank in paying the money over to him could no longer be treated as a tort.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed April 27, 1880.

This was an action of trover, commenced on the 11th day of May, 1878, by William Dewar against the Bank of Montreal, for the alleged conversion of a certificate of deposit for $5,700 and interest, the property of the plaintiff. The defendant appeared and filed a plea of not guilty, and on the issue thus formed, a trial was had in September, 1879, resulting in a verdict in favor of the plaintiff, for $7,220. This verdict having been set aside by the court on motion of the defendant, the

cause was again tried in November, 1879, and a verdict rendered in favor of the plaintiff for $6,586.25. For this sum and costs, the court, after overruling the defendant's motion for a trial, gave judgment for the plaintiff.

The evidence is in some respects conflicting, but the facts as shown by the testimony of the plaintiff and his witnesses, are substantially as follows:     On the 16th day of May, 1874, one James Warrack was, and for a considerable time had been, the British vice-consul at Chicago, and also the general agent at the same place of Henderson Brothers, proprietors of the Anchor line of steamships.     He had then resided in Chicago for many years, was in receipt of a large income, and was in good financial standing.     At that time the bank account of Henderson Brothers, as well as Warrack's individual account, was being kept by Warrack at the Chicago branch of the Bank of Montreal.

The plaintiff was a young man—an Englishman by birth—who had been residing in Chicago several years prior to the transactions in question, and was then, and for about fifteen months had been, in the employ of said Warrack as clerk in his office.     On the 16th day of May, 1874, the plaintiff received, as his distributive share of his father's estate in England, a remittance in the form of a letter of credit on the Marine Bank of Chicago, for the sum of £1,430, amounting to $7,721.80 of our money, and on the same day said letter of credit was duly presented and the money drawn by the plaintiff, said Warrack going with him to the bank for the purpose of identification. Prior to this time the plaintiff had informed Warrack as to his expected remittance, and Warrack had offered to assist him in getting it cashed.     The money after being drawn from the bank, was taken to Warrack's office and counted, and found correct, whereupon Warrack borrowed of the plaintiff $1,500, and gave him his note therefor, and the plaintiff took for his own use $521, leaving the sum of $5,700.     Warrack then suggested that the plaintiff deposit this sum in the Bank of Montreal, as the safest place in which to put it.     On this suggestion the plaintiff went to said bank and saw the manager, Mr. Richardson, and after informing him of the deposit he wished to make,

Bank of Montreal v. Dewar.

inquired as to the rate of interest the bank would allow on such deposit. Richardson informed him that under the rules of the bank four per cent. was the highest rate that could be allowed. The plaintiff returned to Warrack and reported that the bank would allow him but four per cent. interest, whereupon Warrack said that he could get more, and requested the plaintiff to go back to the bank and ask Mr. Richardson to step over to his office. Richardson returned with the plaintiff, and had an interview with him and Warrack together, and there agreed on behalf of the bank to allow five per cent. interest. In the course of this interview Richardson was informed by Warrack that the money belonged to plaintiff. Warrack then took the money and went with it to the bank and deposited it in his own name, and received therefor a certificate of deposit, of which the following is a copy, viz :

"$5,700.                                            No. 93,137.

"BANK OF MONTREAL,
"CHICAGO, May 16th, 1874.

"Received of James Warrack, Esq., the sum of five thousand seven hundred dollars, which sum will be accounted for by this bank to the said James Warrack, and will bear interest at the rate of five per cent. per annum, provided that the money remains not less than three months from date of deposit. Fifteen days' notice to be given of its withdrawal, on which notice interest shall cease. This receipt to be given up to the bank when payment of either principal or interest is required.

"For the Bank of Montreal,

"W. RICHARDSON, M'g'r."

When Warrack returned to the office with this certificate of deposit, the plaintiff asked why he had taken it in his own name, to which Warrack replied that it would make no difference, as he would immediately indorse it over to him, and thereupon Warrack wrote across the back of the certificate the following indorsement: "Pay to the order of William Dewar, J. Warrack;" and delivered it so indorsed, to the plaintiff. The plaintiff then placed it in an envelope with the $1,500 note and certain papers relating to the distribution of his father's estate, and after having sealed it up and written his own name

on the envelope, deposited in the safe of Henderson Brothers, standing in the office—a safe which was also used by Warrack for keeping his private papers.

In August following, the plaintiff went on a visit to Canada, from which he returned to Chicago on the 4th day of September. On the day next preceding his return, Warrack, without his knowledge or consent, took said package of papers from the safe, and took out the certificate of deposit, and after having erased the indorsement thereon by entirely obliterating all of it except the signature, and by drawing a line over that, again indorsed it and took it to the bank and surrendered it, and received a credit therefor on his individual account for the amount of principal and interest due thereon. The next morning the plaintiff, on his return to the city, and before meeting Warrack, went to the bank to ascertain whether he could draw a portion of the money deposited, and was there informed by the head book-keeper, of whom he made the inquiry, that Warrack had already drawn the money and had it placed to his own credit. On receiving this information, the plaintiff said to said book-keeper that they had no business to pay the money, as they knew it belonged to him. It does not appear that any further communication in relation to the matter passed between the plaintiff and the bank until about the time of the commencement of this suit, which was nearly four years afterwards.

The plaintiff, after his interview with the book-keeper at the bank, went to Warrack's office, and when the latter came in, asked him for the certificate, and was told that he had used it. The plaintiff then said that the money belonged to him, and that he, Warrack, had no business to use it; to which the latter replied that it would be all right, as he would give the plaintiff a first mortgage on forty acres of land at Washington Heights, of which he had control, and which was worth $40,000. This the plaintiff consented to take, on the supposition that said land belonged to Warrack, and was unincumbered. No mortgage was executed, however, said Warrack delaying its execution by one pretext or another, until some time in January, 1878, when the plaintiff ascertained for the first time that the title to said land stood in the name of Warrack's wife, and that

it was heavily encumbered, so that it was impossible for said Warrack to secure said money thereon.

During this interval of nearly three years and a half, the plaintiff, relying upon Warrack's promise of security, treated the transaction as a loan to him of the $5,700 represented by the certificate of deposit. On several occasions he rendered to Warrack statements of account, in which he charged him with both the $1,500 and the $5,700, and also with interest on both of said sums at the rate of nine per cent. per annum, and credited him with a large number of payments on account. These statements covered the entire period from September 3, 1874, to January 1, 1878. Said payments were made by checks drawn by Warrack in favor of the plaintiff on the Bank of Montreal, most of which checks appear to have been presented at the bank and drawn by the plaintiff in person. For the greater part of these payments the plaintiff gave Warrack his receipts, some of which were expressed as being " on account of interest on loan; " others " on account of loan and interest," and others " on account." The aggregate of said credits appears to have been considerably more than sufficient to satisfy the $1,500 loan, and interest thereon in full, leaving a surplus of several hundred dollars to apply on the $5,700.

The last of said statements of account was transmitted by the plaintiff to Warrack on the 22d day of January, 1878, and accompanying the same was a letter to Warrack, in which the plaintiff wrote as follows:

"Enclosed please find statement to Jan'y 1st, 1878, showing a balance in my favor of $7,199.81, which I hope you will find correct. As it is now over three years since you had the money, I would like a settlement in as short a time as possible, for I have had a good offer in the commission business, which I am confident will pay me better than the small salary I now get. Hoping this will meet your approval, I am," etc.

No claim was made by the plaintiff against the Bank of Montreal for the money in question until after January, 1878, when he ascertained the inability on the part of Warrack to give security on the Washington Heights property, nor until after he learned of the insolvency of Warrack, as he did at about the same time.

As to many of the foregoing circumstances, the testimony of Warrack is directly in conflict with that of the plaintiff. He testifies that after the plaintiff obtained the remittance from England and had drawn the money from the bank, he sought his, Warrack's, advice as to what he had better do with it, saying he had been advised to speculate with it on the Board of Trade. Warrack cautioned him against so doing, and advised him to put it at interest; that for the time being he had better deposit it in the Bank of Montreal; and that he, Warrack, would look after it for him, and as soon as he could find a place to put it out at satisfactory interest, or had occasion to use it himself, he would do so; that in case he used it he would pay him nine per cent. interest; that the plaintiff did not report to him that he had been to the bank and ascertained that the bank would allow him only four per cent.; that he did not send the plaintiff for Richardson, and that no interview in relation to the rate of interest took place at his office between Richardson, himself and the plaintiff, and that he never informed Richardson, on that or any other occasion, that the money belonged to the plaintiff; that he himself went to the bank and arranged with Richardson for five per cent. interest; that he was able to obtain that rate only by making the deposit in his own name, as the bank would pay that rate only to its regular customers; that it was understood between himself and the plaintiff before the deposit was made, that the money was to be deposited and the certificate taken in his name, and that after it was done so, the plaintiff was well satisfied with the arrangement.

He further testifies that when he returned to his office with the certificate, he showed it to the plaintiff and told him that he would indorse to him, so that in case of his, Warrack's, death, it would appear to be the property of the plaintiff, and that if at any time Warrack wanted to use it, he could strike out the indorsement; that he then placed the certificate in an envelope, and asked the plaintiff to write his name on the back of the envelope, which the plaintiff did, and then returned it to Warrack, who took it and deposited it with his own private papers in the safe; that on the 3d day of September following,

Bank of Montreal v. Dewar.

he, having occasion to use said money, took the certificate from the safe, and after striking out the indorsement, indorsed it again, and took it it to the bank, and surrendered it, and had the money passed to his individual account; that when the plaintiff returned, he told him that he had taken the money, according to their previous arrangement, and would pay him nine per cent. interest, and that the plaintiff was entirely satisfied with his having done so; that he proposed to give the plaintiff a mortgage on the Washington Heights property, in case he could get it free from incumbrance, which, however, he was unable to do, and therefore gave no mortgage.

Messrs. DEXTER, HERRICK & ALLEN, for appellant; that a party is bound by the acts of another done in pursuance of an apparent authority, cited Noble v. Nugent, 89 Ill. 524; Anderson v. Armstead, 69 Ill. 452; McNeil v. Tenth Nat. Bank, 46 N. Y. 345; Mixon v. Brown, 57 N. H. 34; DeBaun v. Atchison, 14 Mo. 543; Doubleday v. Cress, 60 Barb. 181; Bridenbacher v. Lowell, 32 Barb. 9.

What facts amount to a ratification is a question of law: Proffat on Jury Trials, § 276; Swartwout v. Evans, 37 Ill. 443; Trustee v. McCormick, 41 Ill. 323; Marine Co. v. Carver, 42 Ill. 66; Henderson v. Cummings, 44 Ill. 325; Paul v. Berry, 78 Ill. 158.

Generally, as to what constitutes a ratification: Williams v. Merritt, 23 Ill. 623; Mathews v. Hamilton, 23 Ill. 470; Evans on Agency, Chap. 7, § 1; Addison on Torts, § 52; Smith v. Cologan, 2 Tenn. R. 188; Cushman v. Loker, 2 Mass. 105; Ogden v. Marchand, 29 La. An. 61; Trustees v. McCormick, 41 Ill. 323.

Mr. ROBERT HERVEY and Mr. C. M. HARDY, for appellee; that the bank was guilty of negligence in paying the money without inquiry as to the erasure of indorsements, and W.'s authority to receive it, cited Wharton on Negligence, § 3.

There was no ratification: Story on Agency, § 256; Ward v. Williams, 26 Ill. 447; Harris v. Miner, 28 Ill. 135; Lloyd v. Lee, 45 Ill. 277; Brooks v. Record, 47 Ill. 30; Kane Co. v. Herrington, 50 Ill. 232.

There is no estoppel by acts of appellee: R. R. I. & St. L. R. R. Co. v. Shunck, 65 Ill. 233; Ely v. Hanford, 65 Ill. 267; Flower v. Ellwood, 60 Ill. 438; First Nat. Bank v. Richer, 71 Ill. 39.

The principal must have had full knowledge of all the facts before he will be held to a ratification: Farwell v. Meyer, 35 Ill. 40; Manf'r's Nat. Bank v. Barnes, 65 Ill. 69; Kerr v. Sharp, 83 Ill. 199; Story on Agency, § 239; Hardeman v. Ford, 12 Geo. 205; Nixon v. Palmer, 4 Seld. 398; Billings v. Morrow, 7 Cal. 171; Pittsburgh R. R. Co. v. Gazzam, 32 Pa. St. 340; Cadwell v. Meek, 17 Ill. 220; Matthews v. Hamilton, 23 Ill. 470; Cook v. Hunt, 24 Ill. 535; Gilman & C. & S. R. Co. v. Kelly, 77 Ill. 426; Fletcher v. Dysart, 9 B. Mon. 413; Blivins v. Pope, 7 Ala. 371; Bell v. Cunningham, 3 Pet. 81.

Ratification is a question for the jury: Goodell v. Woodruff, 20 Ill. 191.

Where there is evidence to support the verdict it will not be set aside, although it may appear to be against the weight of evidence: Morgan v. Ryerson, 20 Ill. 343; Bloom v. Crane, 24 Ill. 48; Martin v. Ehrenfels, 24 Ill. 187; Chicago v. Garrison, 52 Ill. 516; Millikin v. Taylor, 53 Ill. 509.

BAILEY, P. J. So far as the evidence is conflicting, we find no such preponderance in favor of the defendant as would justify a reversal of the judgment on that ground. The question then is, whether, on the case made by the plaintiff, the verdict should be permitted to stand. In considering this question, it must be assumed that the money represented by the certificate of deposit belonged to the plaintiff; that such fact was known to the bank, and that the conversion of the certificate and the appropriation of the money to his own use by Warrack was, at the time, as between the plaintiff and Warrack, unauthorized and wrongful.

In determining, however, whether the bank was justified in allowing Warrack to draw the money, and place it to the credit of his individual account, we must look to the apparent authority in relation thereto with which he was clothed by the plaintiff. It is a familiar rule that where the owner of prop-

erty holds out another, or allows him to appear as the owner of, or as having full power of disposition over the property, and innocent parties are led into dealing with one having such apparent ownership or authority, they will be protected in doing so.    McNeil v. The Tenth National Bank, 46 N. Y. 325; Anderson v. Armstead, 69 Ill. 452.

Although the money in question belonged to the plaintiff, and such ownership was known to the bank, still, he placed it in the possession of Warrack, and allowed him to take it to the bank and deposit it in his own name, and to receive therefor a certificate of deposit, payable to himself.    It is true, the plaintiff's testimony tends to show that when he permitted Warrack to take the money for the purpose of depositing it, he did not expect that it would be deposited in Warrack's name, although it does not appear that he gave any specific directions on that subject.    But the possession of the money by Warrack, in the absence of notice of any limitation upon his authority over it, warranted the bank in receiving it on deposit, and in issuing therefor a certificate or other voucher in any form Warrack might see fit to direct.    Even if he had deposited it to the credit of his private account at that time, we think his possession of the money would have raised a sufficient implication of authority so to do.    True, the officers of the bank knew it was the plaintiff's money, but they also knew that he had entrusted it to Warrack in such manner as to vest him apparently with full power of disposition over it, and they had a right, in the absence of notice to the contrary, to assume such apparent authority to be his real authority.

But when Warrack presented the certificate of deposit at the bank for payment on the 3d of September, there existed the still further and equally conclusive ground for the inference that in taking the certificate payable to himself, he acted upon competent authority, viz: that the plaintiff had, up to that time, manifested no dissent from or disapproval of his act in taking it in that form.    Where an agent departs from, or acts without or contrary to his instructions, the principal must dissent, and give notice within a reasonable time; and if he does not his assent and ratification will be presumed.    Dunlap's Paley

on Agency, 31, and 171, note O.  The certificate in this case was shown to the plaintiff as soon as Warrack returned to the office after making the deposit, yet no notice was given to the bank that it was in any respect unsatisfactory.  It remained outstanding between three and four months, during all which time the plaintiff acquiesced in what his agent had done in his behalf.  It will scarcely be contended that three months and a half was not much more than a reasonable time for the plaintiff to signify to the bank his dissent from the act of his agent, his place of business being during all that time, as the proof shows, directly across the street from the bank.  By failing to object, he must be deemed to have ratified his agent's acts, and he cannot now be heard to say, as against the bank, that the agent acted in violation of his instructions or in excess of his authority.

If the bank, then, had a right, under the circumstances, to presume authority in Warrack to take the certificate payable to himself, it had a right to pay the certificate on presentation, according to its terms.  The validity of the contract evidenced by the certificate being established, the right of the bank to discharge itself from liability by paying the money to the party therein named as payee necessarily follows, unless at the time payment was made it was chargeable with notice of a claim on the part of the plaintiff that payment should be made to him, notwithstanding the terms of the certificate.  Was it chargeable with such notice?

Such notice could not arise, from the mere fact that the money was the plaintiff's.  While that fact was known to the bank, it also knew that he had so far placed the money at the disposal of Warrack, as to authorize him to deposit it to his own credit.  Nor is there any evidence of notice to the bank of a revocation of Warrack's authority over it.  It is insisted, however, that the bank was put upon inquiry as to the plaintiff's rights, by the indorsement on the certificate which had been erased and obliterated prior to its presentation for payment.

It is well settled that the payee of commercial paper, after having assigned such paper by indorsement, has a right, on its

return to his hands, to strike out any indorsement he may have placed thereon, and thus re-invest himself with the legal title. The erasure of such indorsement, then, subjects the paper to no suspicion, and raises no presumption of any outstanding interest in any person who may have previously held it. If the maker is bound to take notice of the indorsement when the paper is presented for payment, he must also be presumed to know that the payee in whose hands he finds it, had, *prima facie*, a right to make the erasure. In the present case, if it be granted that the indorsement was notice to the bank that the certificate had at one time been assigned to the plaintiff, its erasure was explained by the fact that the paper had been retured to the hands of the payee, who had a right to erase it. The fact to be explained and a sufficient explanation were both at hand, and the bank, therefore, was under no obligation to make further inquiries.

But even if it should be conceded that the bank was not warranted in paying the certificate by crediting the money to Warrack's private account, we think the plaintiff has, by his subsequent conduct, concluded himself from insisting that such payment was wrongful. If the payment amounted to a tortious conversion of the certificate, or of the money due thereon, doubtless the plaintiff, had he chosen so to do, might have held the bank liable to him for the tort. But the money having thereby passed into the hands of Warrack, and having been appropriated by him to his own use, it was competent for the plaintiff, at his election, to waive the tort both on the part of the bank and of Warrack, and treat the money as a debt owing from Warrack to him. He was at liberty, with the concurrence of Warrack, to convert it into a loan, bearing a stipulated rate of interest, and give Warrack such time of payment as he might think proper. But having made the election, he would be bound to abide by it. The moment the transaction became converted into a loan, the possession of the money by Warrack would be rightful, and the act of the bank in paying it to him could no longer be treated as a tort. The two positions would be inconsistent with each other, and the plaintiff

having elected the one, would not be permitted to resort to the other.

The evidence seems to establish, beyond controversy, the fact that the money in question was, from the very day it was passed to Warrack's credit at the bank, treated by the plaintiff and Warrack as a loan. It is true, the plaintiff, on learning that Warrack had appropriated said money, entered a protest against his having done so; but the plaintiff's objections seem to have been instantly silenced by a promise on the part of Warrack to pay him interest at the rate of nine per cent. per annum, and to secure the loan by mortgage on certain real estate. From that time, for over three years, Warrack retained the money under the arrangement thus made. In the statements of account rendered by the plaintiff, it was charged to Warrack in express terms as a loan, and interest thereon at the stipulated rate of nine per cent. per annum was computed and charged. In the same account the various payments made by Warrack were credited and applied to the extinguishment of the interest thus computed. The evidence fails to show that during this entire period the plaintiff uttered any further protests against the use of the money by Warrack, or said or did anything inconsistent with the position that Warrack held the money as a loan.

We are unable to perceive that the case is changed in the least, by the fact that Warrick failed to secure the loan by mortgage according to his promise, nor by the fact that the plaintiff was deceived as to his ability to give a first mortgage on the Washington Heights property. The transaction did not cease to be a loan, because of a failure of the borrower to give the stipulated security. It is possible the plaintiff might have rescinded the arrangement under which the transaction was to be treated as a loan, on account of the inability of Warrack to give the stipulated security, had he asserted his right to do so in apt time, but we know of no principle upon which he could be allowed to do so after the lapse of between three and four years. But there is no pretense that, as between the plaintiff and Warrack, any such rescission was ever attempted. The last transaction between them disclosed by the record, consists of

a statement of account based upon their contract, and in which interest at the rate agreed upon for the full period then elapsed was computed.   Said statement was rendered January 22, 1878, after the plaintiff had become fully apprised of the inability of Warrack to give the promised security.   The statement, as well as the letter which accompanied it, constitutes a clear and unequivocal affirmance of the loan.

It appearing, then, clearly and unquestionably, that from the day the bank credited Warrack with the amount of the certificate of deposit up to as late as the 22d day of January, 1878, the money in question was held by Warrack as a loan from the plaintiff to him, we know of no principle of law upon which the bank can now be charged by the plaintiff with the conversion of the certificate.   The bank is as effectually discharged as it would have been if the money had been paid directly to the plaintiff and by him loaned to Warrack.

We are unable to perceive any ground upon which the action of the plaintiff can be sustained, and the judgment will accordingly be reversed.

Judgment reversed.