## William Dewar

### *v.*

## The Bank of Montreal.

*Filed at Ottawa November 14, 1885.*

Banks and bankers—*payment of deposit to other than the owner— of circumstances that will protect the bank in so doing.* The owner of money intrusted the same with his employer to deposit for him in a bank, at interest, and the employer made the deposit in his own name, the bank knowing whose money it was at the time, and the employer afterward indorsed the certificate of deposit to the owner, who deposited the same in a safe to which his employer had access, but gave no notice to the bank until after his employer had taken the same and drawn the money thereon, and had it placed to his own individual account, when the owner did inform the bank of his rights, but after this he treated the transaction as a loan to his employer for over three years, expecting to have him secure the same, during which time he made no claim on the bank: *Held,* that under the facts the owner of the money so deposited could not maintain an action of trover against the bank for a conversion of the money, for the reason that he had by his acts clothed his employer with an apparent ownership or control of the money, and had acquiesced in the payment of the money to him for so long a time, and treated the transaction as a loan to him.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. John G. Rogers, Judge, presiding.

Mr. ROBERT HERVEY, and Mr. C. M. HARDY, for the plaintiff in error:

It is no defence to a suit for negligence that the defendant may not have expected the particular injury complained of, or to show want of evil intent, for where there is evil intent the act becomes willful. Wharton on Negligence, sec. 47.

The doctrine of ratification, where the relation of principal and agent exists, has no application here. The act of an unauthorized stranger will not be binding unless expressly ratified. *Ward* v. *Williams*, 26 Ill. 447; *Harris* v. *Miner*, 28 id. 135; Story on Agency, sec. 256.

It is only where a party fails to make his rights known, when fairness and good conscience require he should do so to protect the interests of others, that he can not be heard, as against them, to assert such rights. *Lloyd* v. *Lee*, 45 Ill. 277; *Brooke* v. *Ricord*, 47 id. 30; *Kane County* v. *Herrington*, 50. id. 232.

The party claiming an estoppel must have been so far governed and influenced by the subject matter of them, that it would be a fraud on him to regard the same otherwise than as an estoppel. *Railroad Co.* v. *Sherrick*, 65 Ill. 233; *Ely* v. *Hanford*, id. 267; *Flower* v. *Elwood*, 60 id. 438.

Ratification can only be effectual when the act is avowedly done for the principal, and not when done for or on account of the agent himself. Story on Agency, sec. 251.

When the act of ratifying the act of an agent is to be implied from the subsequent conduct of the principal, it must appear that the principal had full knowledge of all the facts affecting his interest in the transaction. *Farwell* v. *Meyer*, 35 Ill. 40; *Manufacturers' Nat. Bank* v. *Barnes*, 65 id. 69; *Kerr* v. *Sharp*, 83 id. 189; Story on Agency, sec. 239.

"Knowledge of all the facts." This is essential. *Hardeman* v. *Ford*, 12 Ga. 205; *Railroad Co.* v. *Gazzom*, 32 Pa. St. 340; *Nixon* v. *Palmer*, 4 Seld. 398; *Caldwell* v. *Meek*, 17 Ill. 220; *Billings* v. *Morrow*, 7 Cal. 171; *Matthews* v. *Hamilton*,

23 Ill. 470; *Cook* v. *Hunt*, 24 id. 435; *Gilman* v. *Railroad Co.* 77 id. 426; *Fletcher* v. *Dysart*, 9 B. Mon. 413.

Ratification is a question of fact for the jury.    *Goodell* v. *Woodruff*, 20 Ill. 191.

Messrs. DEXTER, HERRICK & ALLEN, for the defendant in error:

The payment to Warrack was within the scope of the apparent authority conferred by Dewar.    A party is bound by the acts of another done in pursuance of an apparent authority from his own acts or conduct.    *Noble* v. *Nugent*, 89 Ill. 524; *Anderson* v. *Armstead*, 69 id. 454; *Mixon* v. *Brown*, 57 N. H. 34; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 345; *De Baun* v. *Atchison*, 14 Mo. 543; *Doubleday* v. *Cress*, 60 Barb. 182; *Bridenbecker* v. *Lowell*, 32 id. 9.

A payee or indorsee of a check, note or draft, in whose possession it is, is presumptively the owner of it, and entitled to demand payment, although a special indorsement by him to a third person appears on it.    *Brinkley* v. *Going*, Breese, 366; *Palmer* v. *Gardner*, 77 Ill. 143; *Best* v. *Nokomis Bank*, 76 id. 608; *Leitner* v. *Miller*, 49 Ga. 486; *Dugan* v. *United States*, 3 Wheat. 172; *Lemon* v. *Temple*, 7 Ind. 556; *Bank of Kansas City* v. *Mills*, 24 Kan. 604; *Williams* v. *Dyer*, 5 Blackf. 160.

What facts amount to a ratification, is a question of law. It is only when the facts are doubtful or disputed that it becomes a question for the jury.    Proffatt on Jury Trials, sec. 276; *Swartwout* v. *Evans*, 37 Ill. 443; *Trustees* v. *McCormick*, 41 id. 323; *Marine Co.* v. *Carver*, 42 id. 67; *Henderson* v. *Cummings*, 44 id. 325; *Paul* v. *Berry*, 78 id. 158.

If a party after knowledge of the facts ratifies and adopts the unauthorized acts of his agent or unauthorized person, he will be bound by them.    Livermore on Agency, 44; *Williams* v. *Merritt*, 23 Ill. 626; Evans on Agency, chap. 7, sec. 1; *Smith* v. *Cologan*, 2 T. R. 188; *Cushman* v. *Lokes*, 2 Mass.    .

105; *Trustees* v. *McCormick*, 41 Ill. 323; *Henderson* v. *Cummings*, 44 id. 345.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

On the 16th of May, 1874, William Dewar, the plaintiff in error, received from England his distributive share of his father's estate, amounting to $7721.80. Of this sum, he, at the time, loaned $1500 to James Warrack, in whose employ he had been for some fifteen months past. Warrack, at the time, was the British vice-consul at Chicago, and was then apparently prosperous, and was in good financial standing. He, at the time, kept his bank account with the Bank of Montreal, defendant in error, a fact known to Dewar. After having loaned to Warrack the $1500, and retained for his own use $521, Dewar called at the Bank of Montreal to ascertain what interest it would pay him on the balance as a deposit. On being informed that four per cent was all that could be obtained, he returned to the office of Warrack and informed him of the fact, who replied that he could get more, and thereupon sent for Richardson, the manager of the bank, to come over to the office, who accordingly did so, and after some consultation between the three, it was agreed that the bank was to pay on the deposit five per cent interest,—Richardson being informed at the time that the money belonged to Dewar. Shortly afterwards, Warrack took the money into the bank and deposited it in his own name, for which he received of the bank the following certificate:

No. 93,137.

"$5700.

"BANK OF MONTREAL,

CHICAGO, *May 16, 1874.*

"Received of James Warrack, Esq., the sum of five thousand seven hundred dollars, which sum will be accounted for by this bank to the said James Warrack, and will bear interest at the rate of five per cent per annum, provided that the

money remains not less than three months from date of deposit, fifteen days' notice to be given of its withdrawal, on which notice interest shall cease. This receipt to be given up to the bank when payment of either principal or interest is required.

"For the Bank of Montreal,

W. Richardson, *Mgr.*"

On returning to the office, Dewar asked him why he had taken the certificate in his own name, to which Warrack replied that it made no difference, as he would then indorse it to him, which he did, and handed the certificate so indorsed to Dewar, who deposited it, together with other papers, in a safe in the office, belonging to Henderson Brothers, in which Warrack also kept his private papers. On the 4th of August following, Warrack, in the absence of Dewar, and without his knowledge or consent, as Dewar claims, went to the safe of Henderson Brothers, took the certificate of deposit therefrom, and after having striken out the special indorsement to Dewar, went with it to the bank and drew the money on it. Dewar learning, on his return a day or two afterwards, what had been done in his absence, expressed his disapproval both to Warrack and the bank, protesting that it was without his sanction or authority. At the time of the conversion of the certificate by Warrack, the proceeds were transferred to his private account with the bank, and on Dewar's return, Warrack had a considerable balance to his credit in the bank. Upon Dewar's complaining to Warrack about the appropriation of the certificate of deposit, the latter thereupon told him he would make it all right, and proposed to secure the amount by giving him a first mortgage on forty acres of land at Washington Heights, which he alleged to be worth $40,000. Dewar agreed to accept this proposition, but the mortgage was not executed at the time, and by various false pretences of one kind or another on the part of Warrack, its execution was delayed until in January, 1878, when Dewar ascertained that

the land at Washington Heights belonged to Warrack's wife instead of to him, and that it was heavily incumbered, so that it was valueless as security for the money. During this period, being an interval of over three years, the indebtedness in question was treated both by Dewar and Warrack as a loan from the former to the latter. This is fully shown by various transactions between the parties, one of which will suffice to show how the parties so understood and treated the matter. On the 1st of January, 1878, Dewar made out a statement of Warrack's account, and on the following day enclosed it to him in a letter, stating:

"Enclosed please find statement to January 1, 1878, showing a balance in my favor of $7199.81, which I hope you will find correct. As it is now over three years since you had the money, I would like a settlement in as short a time as possible, for I have had a good offer in the commission business, which I am confident will pay me better than the small salary I now get. Hoping this will meet your approval, I am," etc.

Prior to this time no claim had been made upon the bank by Dewar.

The foregoing statement of the facts is greatly modified by the testimony of Warrack. According to his version of the transaction, his taking of the certificate of deposit in his own name, and his subsequent appropriation of the proceeds, were authorized by the original understanding between him and Dewar. This contention, however, involves the determination of controverted questions of fact with which we have no concern, as the judgment of the Appellate Court is conclusive on all questions of that character.

On the 11th day of May, 1878, Dewar brought an action of trover, in the circuit court of Cook county, against the Bank of Montreal, for an alleged conversion of the certificate of deposit in question. There was a trial on the merits, and a verdict for the plaintiff, which, on motion, was set aside by

the court, and a new trial granted. In November, 1879, the cause was tried again, with like result, and the court entered a judgment upon the verdict of the jury, in favor of the plaintiff, and against the bank, for $6586.25, which was reversed by the Appellate Court for the First District, and that court being of opinion there was no right of recovery on the plaintiff's own showing, refused to remand the cause. Dewar brings the cause from the Appellate Court here, by writ of error, and asks a reversal of the judgment of that court.

It is apparent from the record before us, that the rights of the parties to this controversy, both in the circuit and Appellate courts, turned upon two questions : First, did Dewar, by words or acts, clothe Warrack with real or apparent authority to receive payment from the bank, of the certificate of deposit in question ? Second, assuming that he did not, and that the payment was therefore unauthorized, did he subsequently ratify such payment, or did he act in such a manner as to lead the bank to suppose that he had so ratified it, and thereby lull it into security until its recourse upon Warrack became unavailing by reason of his subsequent insolvency ?

It is equally apparent that at least one of these questions must have been found by the Appellate Court adversely to the plaintiff in error, for otherwise the judgment of the trial court should have been affirmed. If the first question was answered affirmatively, then the other question did not arise, and consequently became unimportant. So far as this court is concerned, it is wholly unimportant upon which question the Appellate Court based its decision, for whether upon the one or the other, the decision of that court is equally conclusive upon this.

We have carefully examined the very able argument on behalf of plaintiff in error, and the only questions of law we find discussed in it are such as arise from conclusions of fact involved in the two propositions above mentioned, one of which, at least, as we have just seen, must have been decided

adversely to plaintiff in error, and such finding is, of course, fatal to his right of recovery.

In any view we are able to take of the case, we think the law is with the defendant in error, and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*