## Bessie Miller, now known as Bessie Cohen, Appellee, v. Lake View State Bank, Appellant.

### Gen. No. 30,658.

1. BANKING—*sufficiency of evidence to support verdict on issue as to forgery of indorsement of payee's name.* In an action against a bank to recover the value of a check alleged to have been cashed on a forged indorsement of plaintiff's signature as payee, verdict for plaintiff held not manifestly against the weight of the evidence as to the question of the alleged forged indorsement.

2. BANKING—*when evidence in action against bank cashing check on forged indorsement not inadmissible as too remote.* In an action against a bank to recover the value of a check alleged to have been cashed on a forged indorsement of plaintiff's name as payee, wherein plaintiff testified to an appropriation of the proceeds of the check by her father-in-law and his refusal to return the same to her, testimony of a conversation between plaintiff's father and the father-in-law respecting the latter's intentions in the matter of accounting to plaintiff was not too remote for admission in evidence.

3. EVIDENCE—*admissibility of pasted fragments of ledger sheet bearing item relevant to issues.* In an action against a bank to recover the value of a check alleged to have been cashed on a forged indorsement of plaintiff's name as payee, wherein plaintiff testified to an appropriation of the proceeds of the check by her father-in-law and his refusal to return the same to her, a sheet of paper upon which plaintiff had pasted the pieces of a torn-sheet admittedly taken from her father-in-law's ledger, bearing an item dated as of the date when the check was alleged to have been taken from plaintiff's pocketbook, and in the handwriting of plaintiff's husband, purporting to record the investment in the father-in-law's business of a sum corresponding to the face of the check, was properly admitted in evidence.

4. HARMLESS AND PREJUDICIAL ERROR—*improper exclusion of answer to specific question on ground of incompetency of witness where answer excluded could not have affected result.* Where in an action by a divorced woman involving her alleged separate property, defendant called her former husband as a witness, but the court, upon objection to his competency, refused to permit him to answer the first question asked, stating that he would be permitted to testify only as to a conversation concerning which plaintiff had testified, and the witness was not further interrogated,

defendant was not prejudiced, although it was error to refuse to allow the witness to answer the specific question asked, since the answer thereto could not have affected the result.

5. SAVING QUESTIONS FOR REVIEW—*objection to one point in oral charge in municipal court action as preserving objections to other points not separately objected to.* Objections to specific portions of an oral charge in an action in municipal court are not saved for review by the making of a specific objection, on the trial, to another portion of such charge.

6. BANKING—*duty of payee of check to notify bank cashing same upon forged indorsement of fact of forgery.* Where no business relations existed between the payee of a check and the bank which cashed it upon a forged indorsement of her signature, such payee was under no duty to notify the bank of the fact that the check had been stolen from her and her name forged thereon.

7. BANKING—*when payee of check not estopped by laches from recovery of value from bank cashing same upon forged indorsement of her signature.* Where the payee of a check was under no duty to notify the bank which cashed it upon a forged indorsement of her signature, of the fact of such forgery, she was not estopped to recover the value of such check from the bank by reason of the fact that she delayed to seek such recovery until after the bank was unable to have recourse against the person for whom it cashed the check.

O'CONNOR, J., dissents.

Appeal by defendant from the Municipal Court of Chicago; the Hon. JOHN J. LUPE, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Affirmed. Opinion filed May 5, 1926.

LITSINGER, HEALY & REID, for appellant.

BENJAMIN B. MORRIS, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiff, Bessie Miller, brought this action against the defendant bank to recover the value of a check for $2,500, which she claimed the bank had cashed on an indorsement of her name, she being the payee in the check, which endorsement was a forgery. The is-

sues joined were submitted to a jury, resulting in a finding in her favor for $2,500. To reverse that judgment the bank has perfected this appeal.

The plaintiff's maiden name was Bessie Silverstein. In October, 1920, she married Benjamin F. Miller. The latter was in the employ of his father, Isadore E. Miller, who was the proprietor of Miller's Department Store. On the occasion of her marriage, her father, Solomon Silverstein, presented her with a check for $2,500, drawn upon Foreman Bros. Banking Co. This check was dated October 30, 1920. The plaintiff and her husband were absent from the city on their wedding trip for about a week, and it is her contention that shortly after their return—she says on the 9th, 10th or 11th of November—she discovered that someone had taken this check out of her pocketbook, and a little later she discovered further that someone had indorsed the check in her name, and that below that indorsement on the check appeared the further indorsements:

"Miller's Department Store
"B. F. Miller."

and that in that form the check had been deposited in the account of the department store, in the defendant bank. She contends further that when she made this discovery she spoke to her father-in-law, Isadore Miller, about it and demanded that he return to her the proceeds of this check, and that he said he would do so, but asked her to wait until after the holidays, and that she agreed to wait until then, but he failed to return the money as he had agreed to do. She further contends that she requested the return of this money a number of times after that but that it has never been returned to her. The bank contends that soon after the return of the plaintiff and her husband from their wedding trip they were in the store of her father-in-law, where the plaintiff as well as her husband were employed, and there had a conversation with the plain-

tiff's father-in-law, in the course of which the plaintiff produced the check which she said she had received from her father and that she then said, in substance, that she and her husband were living in a furnished apartment and would not have occasion to use the money at once, but that when they went to housekeeping they would buy what they needed and draw on the proceeds of this check, and that she then handed the check to her father-in-law, apparently for the purpose of having him bank it and keep the proceeds to the credit of herself and her husband until they should have occasion to charge items against it at the time they went to housekeeping; that her father-in-law at that time called her attention to the fact that the check was not indorsed, and that she replied: "Let Bennie indorse it for me"; that her husband then took the check and indorsed her name upon it, at her request and direction, and also added the other indorsements above referred to, whereupon, on November 11, 1920, the check was deposited in the defendant bank to the credit of Miller's Department Store. It is the defendant's further contention that subsequently the plaintiff's father-in-law furnished the plaintiff and her husband all the furniture and household goods they needed to start housekeeping, together with a lot of clothing, and that many of these articles came from the stock of Miller's Department Store and others were purchased from different concerns in the city of Chicago and charged to Miller's Department Store, and that all of these items were charged against the plaintiff's credit which was created at the time this check was deposited with the defendant bank.

In the fall of 1923, the plaintiff instituted divorce proceedings against her husband, Benjamin F. Miller, which later resulted in the divorce of these parties. After her divorce the plaintiff made a demand on the defendant bank for the amount they had credited to Miller's Department Store on this check, basing her

claim on the ground that her indorsement thereon was a forgery. The defendant not only contends that the indorsement was not a forgery, as we have above set forth, but also that the plaintiff is precluded from recovering the amount of this check from the bank, by reason of laches, and in this connection the defendant's contention is that for a considerable period after the transaction in question Isadore Miller and Miller's Department Store carried substantial deposits with the defendant bank, and if plaintiff had advised the bank within a reasonable time, of her claims that her indorsement on this check was a forgery, the bank could have protected itself and collected the amount of the check from Isadore Miller, but that now Miller's accounts have been closed and he has gone out of business and that they will now find it difficult, if not impossible, to reimburse themselves, if they should be held liable to her.

In support of its appeal the defendant contends that the verdict of the jury and judgment of the court are against the manifest weight of the evidence, so far as the question of the alleged forged indorsement is concerned. There is much conflicting evidence in the record and in our opinion it would be impossible for this court to say, from such evidence, that the verdict and judgment are against the manifest weight of the evidence, on that issue. In support of its position that the indorsement of the plaintiff's name on this check was authorized by her and that the check was delivered by the plaintiff to her father-in-law, the proceeds of it to be kept by him to the credit of herself and her husband until such time as they went to housekeeping, Isadore Miller testified to that effect and also that when the plaintiff and her husband went to housekeeping in the spring of 1921, much of their furniture, as well as clothing, was purchased from different concerns in Chicago and charged to Miller's Department Store, and that these various items were debited to the ac-

count of the plaintiff and her husband on which this deposit of $2,500 had previously been credited, and that these debits totalled more than the $2,500. In support of this testimony the defendant introduced in evidence over 40 invoices, being the invoices of different concerns in the city of Chicago for articles of clothing and furniture sold to Miller's Department Store, all of which Isadore Miller testified were things purchased for the plaintiff and her husband and charged against the $2,500 credit, which had been created in favor of the plaintiff and her husband by the deposit of the check in question. The defendant also introduced two ledger sheets, purporting to show the account of "Name—Mr. and Mrs. B. F. Miller. Address—861 Fletcher Street," with Miller's Department Store. These sheets were taken from the ledger of the store. The account consists of a series of debit items but the alleged credit item of $2,500 does not appear. Isadore Miller testified that he made up this account of Mr. and Mrs. B. F. Miller in his ledger from day to day, and that he made the entries in the ledger as he received the bills. It is not surprising that the jury refused to believe that testimony, if they made a careful examination of these exhibits. It is admitted that the plaintiff and her husband were living in a furnished apartment on Brompton Place in the city of Chicago from the time they were married in the fall of 1920, until about May 1, 1921. Although this account in the ledger of the Miller Department Store, in the name of Mr. and Mrs. B. F. Miller, gives their address as 861 Fletcher street, at which address they did not live prior to May 1, 1921, the account contains a number of items dated prior to that time, the earliest of which is December 4, 1920. Nor does this account show that the items could have been entered in it as Isadore Miller testified, for they do not appear in chronological order so far as the dates are concerned. After several items dated in May, 1921, there is one dated in April of that

year, and after several in September, 1921, appear others in May and June of that year, and after some as late as February, 1922, there is one of January, 1921, and one in March, 1921. No evidence was submitted to the effect that mistakes had been made in noting any of these debits. Although it is contended that all the vouchers submitted represented purchases which were made for the plaintiff and her husband through Miller's Department Store, the amounts of which were to be charged against the credit created by the check in question, the record shows that many of these vouchers are dated prior to the date of the check. The vouchers referred to represented purchases from Marshall Field & Co., on September 29 and 30, 1920, and October 8, 13, 14, 18 and 26, 1920, all of which purchases were very apparently made before any credit could have been created on the books of Miller's Department Store, as a result of the deposit of this check, for they were made before the date of the check. The only witnesses who gave testimony in support of this theory were Isadore Miller and his wife, both of whom clearly were interested in the outcome of this case. It is true that the plaintiff's theory of this case rests for the most part upon her own testimony with corroboration as to some matters in the form of testimony given by her father, and they also were interested in the outcome of this case. It is also true that the record shows some apparent inconsistencies in the testimony of the plaintiff, but with these apparent inconsistencies in the record, some on one side and some on the other, this court may not lightly disregard the great advantage the jury had in observing the various witnesses as they gave their testimony. They had the advantage of a number of the earmarks of truth which the physical observance of the witnesses affords, of the benefit of which we are deprived.

There are also a number of alleged procedural errors of which the defendant complains. During the

cross-examination of Isadore Miller, counsel for the plaintiff asked him whether or not, in a certain conversation which was referred to, the plaintiff's father had said to the witness, "Mr. Miller, why do you have my daughter working here while she is in a family way? Why don't you give her the money back on that check?" and also whether or not he had replied, "I will give her the money back." This question was objected to, the objection overruled and the witness answered: "I never said anything of the kind and I was never asked anything from anybody about the check." Later, the plaintiff's father testified, over defendant's objection, that he did have such a conversation with Isadore Miller, in which he asked those questions and in which Miller made the answer above noted. In our opinion, in view of all the circumstances, it may not reasonably be said that either part of that conversation was so remote as not to be the proper subject of inquiry.

Another matter of which the defendant complains is the action of the trial court in admitting, over its objection, a certain ledger sheet which had at one time been a part of the records of Miller's Department Store. It purported to be a sheet from the ledger, according to Isadore Miller's own testimony, showing the account of his son, the plaintiff's husband. The plaintiff testified that she noticed a number of torn pieces of paper in the waste paper basket in the home of her parents-in-law, and she recovered these torn pieces of paper and put them together, pasting them on another sheet of paper, and this was the ledger sheet in question. This sheet contained an item dated November 8 (no year), and the item read, "Invest in the business of Miller's Department Store, $2,500." In support of its contention, counsel for defendant argue that there is not a word of evidence as to the circumstances under which this entry was made or as to what item the $2,500 referred to. In our opinion the court did not

err in admitting this ledger sheet in evidence. Isadore Miller admitted that it was a sheet from the ledger of Miller's Department Store; that it was in his son's handwriting; that he had seen a sheet like this before "in the big book," but that when he saw it in the book it "was not pasted like that," but that it was a page in that book and that this page was stolen out of the book. The date, November 8, corresponds to the time the plaintiff testified this check was taken from her pocket-book by some one, without her knowledge, and indorsed with her name, also without her knowledge or authority. She was married on October 31, and she testified she and her husband were away for a week and that the theft of this check occurred just after their return. According to that testimony, she and her husband returned from their trip on November 7, and the theft of this check occurred between that time and November 11. Another matter which is pertinent on this question is that Isadore Miller was asked on cross-examination whether his son had any interest in the business of Miller's Department Store and he answered that he had none. In view of this situation we consider that this evidence was admissible.

The defendant called the plaintiff's former husband, Benjamin F. Miller as a witness and asked him one question, which was, "Did Bessie Miller give you some checks after she was married?" At this point counsel for the plaintiff objected to the competency of this witness and the court sustained the objection, saying that he, the witness, could be permitted to testify on only one subject—a conversation as to which the plaintiff had already testified. Counsel for the defendant did not ask the witness any further questions, merely remarking: "Well, I just want to offer to let him testify and I will save the point." In our opinion this witness was competent to testify on at least some subjects but not on all subjects. Cahill's St. ch. 51, ¶ 5. This case involved the alleged separate property

of the plaintiff. The only question asked this witness was, in our opinion, a proper one, and the witness should have been permitted to answer it. But the ruling on this question may not properly disturb this judgment. Counsel for the defendant did not press the question presented by the objection to this question, so far as the ruling on this question was concerned but said, "I just want to offer to let him testify." The general question of the competency of the witness could not be ruled upon, apart from some specific question put to the witnesses, for on some subjects he clearly was incompetent, while on others, he was competent.

Other alleged procedural errors complained of by the defendant have to do with the court's instructions. The court charged the jury orally. As to the objections thus raised it is sufficient to say that under the rules of the municipal court of Chicago, which have been supplied by additional record, filed in this court, pursuant to leave granted on motion of the plaintiff, objections to the giving or refusing of oral instructions to the jury must be specific and must be made immediately upon the conclusion of the charge and before the jury retires. The record in the case at bar shows that in the course of the charge, to the jury, counsel for the defendant made only one objection. Counsel does not now rely upon the part of the charge then objected to, but the objections urged in this court consist of three other specific matters, no one of which was made the subject of any objection in the trial court. That being the situation, any alleged error of the trial court, in connection with the charge to the jury, is not now properly before us.

Finally and chiefly, the defendant contends that the plaintiff may not recover in this case because she, by her conduct following the discovery of the alleged forgery, ratified the indorsement, waived any alleged conversion of the check by the bank and elected to look

to Isadore Miller for the return of her money and in effect treated it as a loan, and relied upon his promise to pay the money back to her. In support of this proposition the defendant has called our attention to a number of cases, and among them *Hughes v. Neal Loan & Banking Co.*, 97 Ga. 383; *Bank of Montreal v. Dewar*, 6 Ill. App. 294, 115 Ill. 22, 26; *Neal v. First Nat. Bank of Lebanon*, 26 Ind. App. 503, 60 N. E. 164; *Rothschild v. Title Guarantee & Trust Co.*, 204 N. Y. 458; *States v. First Nat. Bank*, 203 Pa. 69; and *Continental Nat. Bank of Chicago v. Metropolitan Nat. Bank of Chicago*, 107 Ill. App. 455. In our opinion none of these cases is applicable to the situation with which we have to deal in the case at bar. In *Hughes v. Neal Loan & Banking Co., supra,* it appears that the plaintiff sued the defendant to recover the amount of a check drawn to her order, the defendant having cashed the check on the forged indorsement of her name, and it appears further that after the check had been cashed, the plaintiff treated the matter as a loan between herself and the person who had cashed the check. In that case she accepted $1,000 in part payment, from the one who had cashed the check, and took his note for the balance. The same situation was presented in the case of *Bank of Montreal v. Dewar, supra,* except that in that case nothing had been paid the plaintiff on account. In the case at bar the fact that the plaintiff did not press the matter against her father-in-law but agreed to wait until after the holidays, at the time she says she demanded the return of her money, when she discovered in November that the check had been deposited in the account of Miller's Department Store, and the fact that she may have waited beyond that time, does not establish the fact that she converted the transaction into a loan. We are unable to find any evidence of her having done anything that would warrant such a conclusion. In *Neal v. First Nat. Bank of Lebanon,* there was a direct busi-

ness relationship between the plaintiff and the defendant bank, for the forgeries there involved were of the plaintiff's own checks, as maker, drawn upon his account in the defendant bank. In the case at bar that is not at all the situation. Here the plaintiff had no business connection or contact of any kind with the defendant bank. Moreover, in the case last referred to the forgeries were by the plaintiff's wife and she had drawn many checks on his account throughout a long period of time and signed his name to them with his authority, and all those checks were cashed by the defendant bank with the plaintiff's approval. Then the plaintiff's wife drew several checks on her husband's account, to which she signed his name without authority, and when these checks came through, he took his wife to task for her actions with regard to them, but he made no complaint to his bank, and the court held that by such conduct, so far as his bank was concerned, he had acquiesced in the cashing of the checks. In *Rothschild v. Title Guarantee & Trust Co.*, the defendant made a loan on the security of a bond and mortgage purporting to be executed by one Caroline Strauss, but such execution was a forgery. About a year later Caroline Strauss discovered that her name had been forged to these documents by the procurement of her son who had negotiated the loan and received the proceeds of it, and subsequently, with her check, she caused to be paid to the defendant trust company, out of her own funds, two installments of interest which had become due on the mortgage. The court held that by so doing she had ratified the entire transaction. Later, Caroline Strauss died and the executrix of her estate sued the defendant trust company, alleging the forgery of the bond and mortgage and seeking to recover their value, and the court held that there could be no recovery. There is no analogy between that situation and the one presented in the case at bar, where it is not shown that the plaintiff

has done anything involving the defendant bank, which may be said to have been a ratification of the indorsement of her name on the check in question. In *States v. First Nat. Bank,* the forgery involved was the forgery of the name of a payee named in a draft which the plaintiff purchased from the defendant bank, and it was held that when the plaintiff learned of this forgery he owed a duty to the bank, from which he had purchased the draft, to notify them of it. · Here again, we have a direct business connection between the parties. In *Continental Nat. Bank of Chicago v. Metropolitan Nat. Bank of Chicago, supra,* there was involved a draft for $33, drawn on the Continental National Bank by the First National Bank of St. Paul to the order of one Harper. This draft was raised to $3,300, by some one and was then presented to the drawee bank and certified by it, at which time that bank charged the $3,300 on its books to the St. Paul bank. After the draft had been so certified, Harper deposited it with the American Trust & Savings Bank and that bank credited his account with the amount and he drew against that credit. The American Trust & Savings Bank then deposited the draft in its account with the Metropolitan National Bank and received credit for the amount of the draft. The latter bank then sent the draft through the clearing house and it found its way back to the Continental National Bank, which bank paid the $3,300 to the Metropolitan National Bank. Four years later the Continental Bank demanded the amount of the draft from the Metropolitan Bank and such demand being refused, the Continental Bank sued the Metropolitan Bank. It was shown that the Continental Bank discovered that the draft had been raised from $33 to $3,300, four days after it had certified it, but it did not notify the Metropolitan Bank of its discovery of this fraud or make a demand for the return of the money until four years thereafter. In holding that there could be no recovery

by the Continental Bank, the court held among other things that that bank owed a duty to the Metropolitan Bank to notify it of the situation promptly upon its discovery and having failed to do that it could not recover in an action brought some years later. Again, we have a case where the plaintiff had dealt with the defendant in connection with the paper involved, and their relationship was such as to involve a duty from the one to the other because of that relationship. In the case at bar the plaintiff had had no dealings with the defendant bank of any kind.

The facts in the case at bar are very similar to those which were presented in *Lindenthal v. Northwest State Bank,* 221 Ill. App. 145. There the plaintiffs were a group of partners doing business under the name and style of H. M. Lindenthal. A number of checks had been sent in to them by their customers, drawn to the order of H. M. Lindenthal, and one Durchslag, the cashier of the partnership, indorsed the name of the payee on these checks, without authority, deposited them in the defendant bank and withdrew the proceeds of the checks from that bank and used the money in the purchase of real estate. Later Durchslag confessed his embezzlement. Within a month of these forgeries the partners discovered them and they procured the conveyance of the real estate to them. It was incumbered with a mortgage and the equity of the real estate fell short of the amount of the defalcation. After 21 months the partnership sued the bank which had cashed these checks and recovered a judgment for their amount. Upon appeal of the bank to this court, the judgment was affirmed. It was urged that the plaintiffs had waived any right of action they had against the bank because of their delay in bringing suit. As to such contention the court said: "This contention is based upon alleged negligence in appellees' failure to give appellant prompt notice of such forgeries after receiving knowledge of them. It seems

sufficient to say that as no business relation whatever existed between the parties and knowledge of the forgeries did not come to appellees before use of the proceeds as aforesaid, no duty to give notice was due from appellees to appellant. (*Hamlin's Wizard Oil Co. v. United States Exp. Co.,* 265 Ill. 156, 162.)

"Nor can it be said that the doctrine of estoppel is applicable for when appellees first heard of the forgeries the proceeds had already been used in the purchase of said real estate so that their 'silence induced no act and did no wrong.' (*Hamlin v. Sears,* 82 N. Y. 327.) Nor does it appear from the evidence that appellant would have been in any better position had it received notice of the forgeries, for at no time thereafter does it appear that Durchslag had any property with which to indemnify it. 'Without showing some injury by reason of the delay, the defendant cannot use it as an estoppel against plaintiff.' (*Murphy v. Metropolitan Nat. Bank,* 191 Miss. 159; *A. Blum Jr.'s Sons & Co. v. Whipple,* 194 Mass. 253, 13 L. R. A. [N. S.] 211.)"

As in the *Lindenthal* case, so in the case at bar, the doctrine of estoppel is not applicable, but for a different reason. If the plaintiff owed the defendant bank no duty to notify it of this alleged forgery, then the question of whether her knowledge of the forgeries came to her before it became impossible for the bank to have reimbursed itself, if it had had notice of the forgery, becomes entirely immaterial. We have already pointed out that the plaintiff had had no contact or business relations with this defendant in any way and that she owed the defendant no duty to notify it that her name had been indorsed on the check in question without her knowledge or authority. The plaintiff will not be estopped by her silence or failure to notify the defendant of the forgery of her indorsement, unless the circumstances are such as to place her under a duty to speak and she nevertheless refrains

from doing so and thereby has led the bank to believe in the existence of a state of facts, in reliance upon which the bank has acted to its prejudice. 16 Cyc. 681. *Lloyd v. Lee,* 45 Ill. 277; *Vail v. Northwestern Mut. Life Ins. Co.,* 192 Ill. 567. In the latter case the Supreme Court said: "When an estoppel is claimed by reason of silence * * * it must be silence when there is a duty to speak * * *."

In *Hamlin's Wizard Oil Co. v. United States Exp. Co.,* 265 Ill. 156, the plaintiff sued the defendant to recover the value of a number of money orders payable to the order of the plaintiff, which had been cashed by the defendant for one Walsh, an employee of the plaintiff, who had forged the latter's indorsement on the orders. The Supreme Court held that while it could "scarcely be doubted that the plaintiff was grossly negligent in the management of its affairs" in not having discovered what Walsh was doing long before they did, still "under the law as declared by all the authorities that fact was not a defense," because the plaintiff owed the defendant no legal duty by reason of the relations between them, to exercise care in dealing with its checks and drafts and money orders, so far as the safety of the defendant was concerned.

For the foregoing reasons, the judgment of the municipal court is affirmed.

*Judgment affirmed.*

TAYLOR, J., concurs; O'CONNOR, J., dissents.