## NEAL v. FIRST NATIONAL BANK OF LEBANON.

[No. 3,450.   Filed April 18, 1901.]

BANKS AND BANKING.—*Payment of Forged Checks.—Notice.*— In an action by a depositor against a bank it was shown that his deposits had been withdrawn on checks drawn by his wife; that the depositor was old, had lost his eyesight, and authorized his wife to draw a portion of the checks, but some of the checks were drawn by her without his knowledge or consent, but he was furnished a statement of his account from time to time, and made no objection to the bank of the payment of checks drawn by his wife. *Held,* that plaintiff acquiesced in the bank's action in paying the checks and that he could not recover the amounts so paid.

From the Boone Circuit Court. *Affirmed.*

*B. F. Ratcliff* and *T. J. Terhune,* for appellant.
*S. M. Ralston* and *S. R. Artman,* for appellee.

HENLEY, C. J.—This was an action commenced by appellant to recover from appellee the sum of $275 on a check dated February 8, 1899. The complaint is in one paragraph and alleges that for more than six years prior to the 1st day of January, 1899, appellant was a customer and depositor of appellee; that on the 1st day of January, 1899, he had to his credit $12.97, and on January 4, 1899, he deposited with appellee the sum of $300; that on February 8, 1899, he drew his check on appellee in favor of B. F.

Ratcliff or bearer for the sum of $275, which check was on said day duly presented and payment demanded, and that payment was by appellee refused. That said check was drawn for the purpose of making due and legal demand on appellee for said sum of money, said Ratcliff having no interest in said check and having paid no consideration therefor. The trial court overruled the demurrer to the complaint. Appellee answered in seven paragraphs. Appellant demurred to each paragraph of answer. The court sustained appellant's demurrer to the second, fourth, fifth, and seventh paragraphs of answer, and overruled it as to the third and sixth. The cause was submitted for trial, and by the request of both parties the court made a special finding of facts and stated its conclusions of law thereon. Appellant excepted to the conclusions of law stated.

The question presented by this appeal is raised by the exception to the conclusion of law stated upon the special finding of facts. The special finding stating the facts, which are not disputed, was as follows: "(1) That on February 8, 1899, and for more than ten years continuously previous thereto, the plaintiff Stephen Neal and one Laura A. Neal were husband and wife, and until the 1st day of February, 1899, they lived together as such, and that on the 15th day of June, 1899, the plaintiff Stephen Neal was granted a divorce from the said Laura A. Neal, by the Boone Circuit Court, in Boone county, Indiana. (2) That the plaintiff Stephen Neal was, on February 8, 1899, and for six years previous thereto, a depositor with the defendant, and that on the 8th day of February, 1899, there was to his credit with the defendant the sum of $7.18; that the defendant was on said date, and had been for more than two years previous thereto, a corporation, doing a general banking business in the city of Lebanon, county of Boone, and State of Indiana. (3) That on the 8th day of February, 1899, the plaintiff Stephen Neal drew, or caused to be drawn, his check on the defendant, payable to B. F. Ratcliff or bearer,

for the sum of $275, said check being in the words and figures following, to wit: The First National Bank. Lebanon, Ind., February 8, 1899. No.——· Pay to B. F. Ratcliff or bearer, $275. Two Hundred Seventy-five dollars. Stephen (his x mark) Neal. Witness to mark, G. W. Cassady." Said check bearing a two cent revenue stamp. That on the said 8th day of February, 1899, the said Ratcliff presented said check at the defendant's place of business, to Wes Lane, who was the cashier of defendant, for payment, and demanded of the said Lane payment of said check, and that payment thereof was refused by the said Lane for the reason that there were not sufficient funds to the credit of the plaintiff, with defendant, with which to pay and discharge said check. (4) That on the 4th day of January, 1899, the plaintiff deposited with the defendant to his, plaintiff's, credit the sum of $300, and that the plaintiff's total deposits on the 4th day of January, 1899, with the defendant, amounted to $312.97. (5) That on January —, 1899, Laura A. Neal, plaintiff's wife, under the authority and direction of plaintiff, drew plaintiff's check on the defendant, and signed his name thereto, payable to Theodore Neal or bearer, for the sum of $15, which check was presented by the said Theodore Neal, who is a son of the plaintiff, to defendant, and by defendant paid; that on the 10th day of January, 1899, Laura A. Neal, plaintiff's wife, under the authority and direction of plaintiff, drew plaintiff's check on the defendant and signed his name thereto, payable to Means & Witt or bearer, for the sum of $5.79, which check was presented to the defendant for payment, and by the defendant paid; that on the 13th day of January, 1899, Laura A. Neal, plaintiff's wife, under the authority and direction of plaintiff, drew plaintiff's check on the defendant, and signed his name thereto, payable to the said Theodore Neal or bearer, which check was by the said Theodore presented to the defendant for payment, and by the defendant paid; that on the 18th day of

January, 1899, Laura A. Neal, plaintiff's wife, under the authority and direction of plaintiff, drew plaintiff's check on the defendant and signed his name thereto, payable to the said Theodore Neal or bearer, which check was, by the said Theodore presented to the defendant for payment on said date, and by the defendant was paid, all of which checks were paid out of the plaintiff's account with the defendant, leaving a balance therein on the last named date of $282.18. (6) That on the 11th day of June, 1899, the plaintiff was eighty-two years old, and that in the first week of July, 1898, he lost his eyesight, and from that time to the present he has been and is practically totally blind; that upon the losing of his eyesight in July, 1898, as aforesaid, he became and was unable thereafter, and is at the present time unable to write. That the plaintiff is a man learned in the law, and of strong mental capacity, and was judge of the Boone Circuit Court from the 10th day of November, 1890, until the 10th day of November, 1896. That the plaintiff now and for more than eight years last past has resided within one-half mile of the defendant's place of business. (7) That from July 1, 1898, to January 28, 1899, there were in all twenty-five checks drawn on the deposit of the plaintiff with the defendant and by the defendant charged against said deposit. That all of said checks were written by Laura A. Neal, wife of plaintiff, including the signature thereto. That all of the checks drawn between July 1, 1898, and January 28, 1899, were written and drawn by said Laura A. Neal under the authority and specific direction, in each case given, by the plaintiff, and with his knowledge and consent, except five checks, as follows, to wit: One check for $5 dated November 9, 1898, drawn in favor of Gertrude Neal, a daughter of the plaintiff and said Laura A.; one check for $5 dated October 21, 1898, drawn in favor of said Gertrude; one check for $2 dated November 18, 1898, drawn in favor of said Gertrude, and one check dated December 15, 1898, for $15 payable to said Laura A. Neal or

bearer, and one dated January 27, 1899, for $275 payable to the said Laura A. Neal or bearer, which last five mentioned checks were drawn by the said Laura A. Neal and the plaintiff's name signed thereto without authority from the plaintiff so to do and without his knowledge or consent. That at no time at or prior to the payment of said $275 check did the defendant make any inquiry as to the genuineness of said checks, or whether they had been authorized by the plaintiff. That all of the aforesaid checks have the signature of Stephen Neal only, except said $15 check dated December 15, 1898, and said $275 check dated January 27, 1899, both of which said last named checks have the signatures of Stephen Neal and Laura Neal. (8) That during the time the plaintiff was a depositor with the defendant, he kept a pass-book which was from time to time posted, audited and compared with the books of the defendant, and returned to the plaintiff, together with all the checks audited and charged in said pass-book. (9) That the pass-book kept by the plaintiff and which showed the state of his account with the defendant was, subsequent to the failure of plaintiff's eyesight, posted, audited, and compared with the books of the defendant on August 6, 1898, August 30, 1898, November 30, 1898, and January 1, 1899; that at each time said book was posted, audited, and compared as aforesaid, it was returned to the plaintiff, together with the checks as vouchers, that had been paid by defendant and charged against the plaintiff in his account with defendant; that the said three checks made payable to his daughter Gertrude were returned to him with his pass-book long before January 28, 1899, and he made no objection thereto to defendant, and said check drawn without the knowledge and authority of the plaintiff by his wife, Laura A. Neal, on defendant, for the sum of $15, under the date of December 15, 1898, and which was presented by her to defendant, and which was paid by defendant and charged against the plaintiff in his account with defendant, was on

the 1st day of January, 1899, returned by the defendant to plaintiff and was on said day read to and in the hearing of the plaintiff by his said son Theodore Neal, and that on each occasion said pass-book was returned as aforesaid to the plaintiff, together with the checks, some of the checks were read over to and in the hearing of the plaintiff by his said son Theodore Neal under the direction of plaintiff, and he had ample opportunity to have the same read to him. (10) That on January 4, 1899, the plaintiff became acquainted with the fact for the first time that his said wife, Laura A. Neal, had, on December 15, 1898, without his authority drawn a check over his name for the sum of $15, and had presented the same to the defendant for payment, which had been by the defendant paid to the said Laura A. Neal and charged by defendant against the plaintiff in his account with defendant; that upon his becoming acquainted with the drawing and paying of said $15 check, as aforesaid, he criticised his said wife severely for the drawing of said check without his knowledge and consent, and that upon his censuring her for the same, she promised him that she would refrain thereafter from writing checks on his account with defendant without his knowledge and authority, and the plaintiff did not inform the defendant that his name had been signed to said check without his authority. (11) That for more than eighteen months prior to January 27, 1899, the plaintiff was distrustful of his wife, Laura A. Neal, but during such time wholly concealed his distrust, suspicions and belief in regard to his said wife, as aforesaid, from the defendant and its officers and employes. (12) That at no time prior to January 28, 1899, did the defendant, its officers or employes, have any knowledge of domestic infelicity existing between the plaintiff and his said wife, Laura A. Neal, but the defendant, its officers and employes did have knowledge of the failure of the plaintiff's eyesight from July, 1898, and that his said wife was drawing checks on his account with the defendant, bearing his name in her

handwriting, which were from time to time being paid by the defendant and returned to the plaintiff, and they also had knowledge of the fact that the plaintiff and his wife were living together as husband and wife during the aforesaid time, and did not know that plaintiff's signature to any of said checks was not authorized by him. (13) That at no time did the plaintiff and his said wife have money on deposit in their joint name with the defendant or have any joint accounts with the defendant, and at no time did the plaintiff's said wife have money on deposit with the defendant in her own name or have any account with the defendant in her own name. (14) That after the 1st of July, 1898, the plaintiff's said son, Theodore Neal, who was at said time past fifteen years of age, and who was able to read and write, lived with the plaintiff and was his confidant in all business matters, and was entrusted by the plaintiff to draw money from the defendant on checks written by the plaintiff's said wife, and ran errands for the plaintiff and attended to all the plaintiff's business affairs in a general way. (15) That at the time the defendant paid the said Laura A. Neal the sum of $275, as aforesaid, on the said check drawn January 27, 1899, the defendant and its officers had no notice or knowledge of the want of authority of the said Laura A. Neal to draw said check, but the defendant in paying the same acted in good faith and without any fault on its part, and fully believed that the said Laura A. Neal was authorized by plaintiff to draw said check, but the defendant was induced to pay said check to the plaintiff's said wife by reason of the plaintiff's failure and omission to notify the defendant that she was not authorized to draw checks on his account with the defendant, in his name or otherwise. (16) That the plaintiff was negligent in failing to notify defendant of the want of authority of his said wife to draw checks in his name against his account with the defendant after he had knowledge of the fact that she had, on December 15, 1898, drawn a check against his ac-

count with the defendant, and signed his name thereto together with her own. (17) That the defendant refused to pay the said check drawn by the plaintiff on the 8th day of February, 1899, in favor of B. F. Ratcliff, for the reason that the payment of the $275 by defendant to the said Laura A. Neal so reduced and exhausted plaintiff's account with the defendant that there was not sufficient money to plaintiff's credit with the defendant at the time of the presentation of said check by the said Ratcliff, with which to pay the same.   James V. Kent, Special Judge.   And the court finds as a conclusion of law that the law is with the defendant and that the plaintiff take nothing by his suit.   To which conclusion of law the plaintiff excepts and objects. James V. Kent, Special Judge."

The relation and relative obligations which arise between a bank and its depositing customers are in general simply those of debtor and creditor.   The deposits are regarded as loans to the bank without interest, and the money goes into the general fund and is used by the bank for its own benefit in its usual financial operations.   The bank thus gets the benefit of the loan of the depositor's money, and as a compensation to the depositor there is an implied obligation on the part of the bank to honor and pay on presentation the checks and drafts of the customer until his deposit is exhausted.   The deposit creates a debt which is discharged *pro tanto* by the payment of the depositor's checks.   See, *Boyden* v. *Bank,* 65 N. C. 13; *Himstedt* v. *German Bank,* 46 Ark. 537; *Perley* v. *Muskegon County,* 32 Mich. 132, 20 Am. Rep. 637; *McLain* v. *Wallace,* 103 Ind. 562.

The rule of law that a bank is presumed to know the signatures of its depositors and that it pays forged checks at its peril is too well settled to need the citation of authorities to sustain it.   But if the depositor's attention is called to the forgery and he fails to complain, and acquiesces in the action of the bank, he, to all intents and purposes, makes the forger his agent, and relieves the bank from liability as to

all amounts paid out after the attention of the depositor had been called to the action of the bank. The reason of this rule is that the depositor owes some duty as such to the bank. If his laches or negligence is the cause of the bank paying a check out of his account which it would not have paid had it been in possession of the facts known to him and of which he negligently omitted to put it in possession, the loss then must fall upon the depositor.

*First Nat. Bank* v. *Allen,* 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. 80, was an action against a bank to recover a deposit. The money had been paid out upon forged checks signed by the depositor's clerk. The forgeries covered a period of six months. The depositor was furnished each month with a statement of his account and all the checks which had been paid were returned to him with the statement. It was therein held that the bank was only liable to the depositor for the payments made before the furnishing of the first monthly statement.

In *Bank* v. *Morgan,* 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811, it is held that the pass-book of a depositor balanced at intervals by the bank and returned to him is only an account stated, and is not conclusive; but that where he omits to examine the charges therein, and canceled checks returned as vouchers with the pass-book, and by so doing fails to discover that the amounts of a number of checks have been raised by his clerk to whose care he has entrusted his account with the bank, and he is thus enabled to give timely notice of the frauds to the bank, he is guilty of such negligence, that, in an action by him to recover the amounts paid upon the altered checks, it is error for the court to direct a verdict in his favor.

Much stronger facts are presented in the case at bar. Here the checks and pass-book were examined by appellant, or at least the fact that the forgeries had been committed was brought to his attention; yet he wholly failed to notify appellee of such facts, and by so doing he in fact acquiesced in appellant's action in paying the checks.

In *Wind* v. *Fifth Nat. Bank,* 39 Mo. App. 72, it was held that where checks of a depositor on a bank are paid by the bank on forged indorsement of the payees, if the depositor, when his bank book is returned to him balanced with the canceled checks as vouchers, having knowledge of the circumstances from which by reasonable inquiry he could discover the forgeries, fails to exercise such reasonable care and inquiry, and the bank thereby suffers loss or is placed in a worse position than if such inquiry had been made and the facts ascertained and communicated to it within a reasonable time, the depositor loses his recourse against the bank.

In *Weinslein* v. *National Bank,* 69 Tex. 38, 6 S. W. 171, 5 Am. St. 23, it was held, in an action against a bank to recover money on forged checks, that the instruction was not misleading which charged that the bank would be liable unless plaintiff had neglected to examine his account and report the forgeries for such a length of time as worked an injury to the bank; that the bank was injured if by reason of plaintiff's negligence it lost the means of recovering the money which it would have had if notified within a reasonable time, and that if by reason of plaintiff's delay the opportunity of protection is lost, plaintiff would not be entitled to recover. See, also, Morse on Banks and Banking, §472.

What we have said disposes of the question raised upon the demurrer to the answer and also upon the question raised by the exception to the conclusion of law stated upon the special finding of facts. We find no error.

Judgment affirmed.