IELMINI *v*. BESSEMER NATIONAL BANK.

1. Election of Remedies—Application of Doctrine.

   The doctrine of election of remedies has application only where two or more inconsistent remedies are available and one has actually been chosen and pursued to the exclusion of the other or others.

2. Same—Elements.

   The essential conditions or elements of an election of remedies are (1) the existence of two or more remedies, (2) the inconsistency between such remedies, and (3) a choice of one of them; and if any one of the elements is absent, the result of preclusion does not follow.

3. Same—Lodge Funds—Ratification of Payment by Bank to Treasurer.

   The action of plaintiffs, members of a local lodge, in bringing a chancery action against treasurer and supreme lodge on

Election of remedies, see 2 Restatement, Contracts, § 381.
Termination of cause of action by election of remedies, see Restatement, Restitution, § 144.

theory defendants had wrongfully taken funds from bank and appropriated same to their own use which resulted in a decree in favor of plaintiffs constituted a ratification by the plaintiffs of the action of the bank in paying the money to the treasurer and under the doctrine of election of remedies precluded maintenance of subsequent action against the bank for same fund on theory that the bank has in its possession or should have in its possession moneys belonging to the local lodge.

Appeal from Gogebic; Landers (Thomas J.), J. Submitted April 16, 1941. (Docket No. 38, Calendar No. 41,371.) Decided June 2, 1941.

Action by Carlo Ielmini and others, individually and as a voluntary association of individuals for mutual benefit, known as Bessemer Grove No. 1 of the United Ancient Order of Druids, against Bessemer National Bank to recover an amount of money alleged to be on deposit. Verdict and judgment for plaintiffs. Defendant appeals. Reversed, without a new trial.

*Edward W. Massie,* for plaintiffs.

*William F. Pellow,* for defendant.

SHARPE, C. J. Plaintiffs are members of a voluntary fraternal benefit association known as Bessemer Grove No. 1 of the United Ancient Order of Druids situated in the city of Bessemer, Gogebic county, Michigan. The local lodge was under the direction and supervision of the Supreme Grove of the United Ancient Order of Druids, a Louisiana corporation, with headquarters in Indiana. The so-called Supreme lodge never qualified to do business in Michigan, but provided the local lodge with rituals, a constitution and bylaws. The local lodge

was organized for the purpose of fraternal, sick and death benefits.

In 1932, the funds of the local lodge were kept in the Peoples State Bank of Bessemer and at the time of the closing of this bank in 1932, the lodge had on deposit with that bank the sum of $1,899.41. After the closing of the above bank, the Bessemer National Bank was the depository for the local lodge. A savings account was opened on January 8, 1934, in the name of Bessemer Grove No. 1, with a deposit of $100. Between the above date and December 17, 1936, the savings account was built up to the sum of $1,137. A commercial account was also opened in the same bank, but it rarely exceeded the sum of $100.

Early in 1935, dissension arose in the local lodge and one Negri, treasurer of the local lodge, after corresponding with the Supreme Grove, instituted a replevin suit to recover the books, rituals and paraphernalia from the secretary. On April 6, 1935, the justice of the peace rendered judgment for plaintiff for the recovery and possession of the seal, charter, books, papers and regalia of the lodge.

Dissension continued among the members of the local lodge, and on November 12, 1936, Negri was appointed by the Supreme Grove special deputy for the purpose of liquidating the affairs of the local lodge. Negri, as treasurer and special deputy, made a demand upon the bank for the lodge money, and on December 10, 1936, the bank turned over to him the fund of $1,137 standing in the name of the local lodge and accepted Negri's written indemnity to save the bank harmless because of such withdrawal.

On March 31, 1937, plaintiffs filed a bill of complaint in chancery against the Supreme Grove and Frank Negri to obtain restitution of certain personal property and to obtain an accounting for the

moneys withdrawn by Negri from the bank. The bill alleged:

"That said defendants, Supreme Grove of the United Ancient Order of Druids, and Frank Negri, on, to wit, the 15th day of December, 1936, contrary to the rights of the plaintiffs, wrongfully withdrew from the said Bessemer National Bank all the funds belonging to the plaintiffs, and have appropriated the same to their own use, and wrongfully and without authority of law appropriated all books, records and instruments, including the local charter, belonging to the said plaintiffs, and have deprived the plaintiffs of the use and benefits thereof, and though since often requested have refused to return said moneys, or any part thereof, and have refused to return the books, records, proceedings and charter which belong to said Bessemer Grove No. 1 of the United Order of Druids. * * *

"And the said Frank Negri fraudulently and without authority or warrant of law withdrew the funds belonging to said plaintiffs in said Bessemer National Bank, and did appropriate the said funds, together with the books, records, proceedings and charter of said plaintiffs, and has refused to return said moneys or said books, records, proceedings and charter to said plaintiffs. * * *

"That by virtue of the premises and the acts and doings of the said defendants, and each and every one of them, the plaintiffs have become damaged and will become greatly damaged in the future in their equitable, legal and just rights."

In their prayer for relief, the plaintiffs asked:

"(b)  That the defendants be required to restore to the plaintiffs the moneys wrongfully taken from the Bessemer National Bank amounting to approximately $1,000.

"(c)  That the said defendants be required to return to the plaintiffs the books, records, proceed-

ings, charter, and all other papers and property wrongfully taken by said defendants. * * *

"(e) That the defendants, and each of them, be required to account for any moneys or property received by them from said Bessemer Grove No. 1 of the United Ancient Order of Druids. * * *

"(g) That the said plaintiffs be awarded such damages as this court shall deem agreeable to equity and good conscience for the interference in the plaintiffs' control and possession of said property, and for the loss and use thereof, and for attorney fees and legal expenses incidental to the recovery of said property."

The defendants filed separate answers denying plaintiffs' claims for relief and asserted that they had full rights to the lodge funds, the paraphernalia and the right to forfeit the charter. The trial court found that the material allegations in plaintiffs' bill of complaint were true and that plaintiffs were entitled to the relief prayed for. A decree was entered accordingly.

The defendants failed to restore the money and on July 11, 1939, plaintiffs commenced the present action against defendant bank to recover $1,137 paid by the bank to Negri on December 17, 1936.

Plaintiffs base their right to recover under the first count of the declaration wherein it is alleged:

"That on, to wit, the 17th day of December, 1936, the said plaintiffs had on deposit with said defendant, the Bessemer National Bank, the sum of $1,137; that on said date last mentioned aforesaid, the said defendant, the Bessemer National Bank, wrongfully and without authority and contrary to the express directions of the plaintiffs paid over and transferred the said sum of $1,137, so belonging to said plaintiffs, to one Frank Negri, thereby converting and depriving the said plaintiffs of said sum of $1,137, to the damage of the plaintiffs of $1,500."

Defendant filed an answer and gave notice of the following affirmative defenses: That plaintiffs are without authority to maintain this action as they did not have filed with the county clerk a certificate of persons conducting a business under an assumed or fictitious name as required by 2 Comp. Laws 1929, § 9825 *et seq.,* as amended ( Comp. Laws Supp. 1940, § 9825 *et seq.,* Stat. Ann. § 19.821 *et seq.*) ; that plaintiffs have made an election of remedies and their present action is barred by the decree rendered in the chancery action; that by virtue of the chancery action plaintiffs have waived any claim against defendant by not making it a party in the chancery proceedings; and that defendant had a right to and did rely upon the actual and ostensible authority of Frank Negri to withdraw as well as deposit moneys.

The cause was tried before a jury and at the close of plaintiffs' case and at the close of all testimony, defendant made a motion for directed verdict for the reasons above given. Decision on this motion was reserved under the Empson act [*] and the cause submitted to the jury which found in favor of plaintiffs. The reserved motion was denied and defendant made motion for a new trial. This motion was denied and a judgment entered in favor of plaintiffs in the sum of $994.91 together with costs. Defendant appeals.

The principal question in this case relates to the election of remedies. Plaintiffs urge that, under the facts and circumstances in this case, Negri, the Supreme Grove, and the bank were joint tortfeasors and the right of plaintiffs to proceed against the bank in the present action is consistent with its right to proceed against Negri and the Supreme Grove

[*] 3 Comp. Laws 1929, §§ 14531–14534 (Stat. Ann. §§ 27.1461–27.1464).—Reporter.

in the chancery suit; and that joint tortfeasors may be sued jointly or separately.

Defendant relies upon *Union Guardian Trust Co.* v. *First National Bank-Detroit,* 271 Mich. 323, 330, where we said:

"In determining whether plaintiff can recover in the instant case on the theory of the defendant's contract obligation, it is of no consequence whether recovery in the former suit was *ex contractu,* as asserted by appellee, or on the ground of fraud, as asserted by appellant. In either case the plaintiff could not have recovered in the former suit, except on the assumption that the money belonging to the estate of Mary Jozefiak had been withdrawn from the bank by the defendant Josephine Demetroff. If she had not withdrawn the money belonging to the estate (rather than other money belonging to the bank) there could have been no recovery in the former case on the ground of an implied contract to repay the estate money belonging to it as money had and received by Josephine Demetroff. Nor could there have been recovery in the former case on the ground of fraud except upon the theory that Josephine had wrongfully possessed herself of money belonging to the Jozefiak estate, rather than of money belonging to the bank. Otherwise the estate could not have been defrauded. On either theory recovery in the former case was necessarily based upon the fact that Josephine had the money belonging to the estate. If she had it, of course, the bank did not have it. Therein lies the inconsistency between the former case and the present suit at law insofar as recovery is now sought on the basis of a contract obligation. Recovery *ex contractu* cannot be had in the instant case except upon the theory that the bank has in its possession the money deposited with it by Mary Jozefiak. Such an assumption is wholly inconsistent with the theory upon which the estate was decreed relief in the chancery

suit. Because plaintiff previously elected between inconsistent remedies, it cannot recover on the ground of a contract obligation in the instant case. *Brown* v. *People's National Bank,* 170 Mich. 416 (40 L. R. A. [N.S.] 657; *Crook* v. *First National Bank of Baraboo,* 83 Wis. 31 (52 N. W. 1131, 35 Am. St. Rep. 17); *Sackett* v. *Farmers State Bank of Boone,* 209 Iowa, 487 (228 N. W. 51); *Fowler* v. *Bowery Savings Bank,* 113 N. Y. 450 (21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479); *Crane* v. *Atlanta & Lowry National Bank,* 40 Ga. App. 83 (149 S. E. 58); *Jones* v. *First National Bank of Lincoln,* 3 Neb. (Unofficial) 73 (90 N. W. 912); *Kaszab* v. *Metropolitan State Bank,* 264 Ill. App. 358; *Midland Savings & Loan Co.* v. *Tradesmen's National Bank of Oklahoma City* (C. C. A.), 57 Fed. (2d) 686.''

The general rule concerning the election of remedies is well stated in 18 Am. Jur. § 9, pp. 132, 133, where it is said:

''It is apparent from the definition and character of the doctrine of election of remedies already given that certain well-recognized conditions must exist before the election becomes operative. These may be termed the 'elements of election,' and their presence is essential in every instance in which the doctrine is to be successfully invoked. Since election presupposes a choice, it is obvious that a first inquiry in all cases where it is sought to charge a litigant with the consequences of having elected a remedy must be directed to the question whether at the time of the election there were two or more remedies available to him. If it is found that alternate remedies existed, their character must then be looked into in order to ascertain whether they are consistent and cumulative or inconsistent, for, as will be seen, the doctrine of election of remedies has application only where the remedies are of the latter character. Available and inconsistent rem-

edies being disclosed, it must further appear that the party has actually chosen and pursued the one to the exclusion of the other or others. Stated briefly, the essential conditions or elements of election of remedies are: (1) The existence of two or more remedies; (2) the inconsistency between such remedies; and (3) a choice of one of them. If any one of these elements is absent, the result of preclusion does not follow.''

The difficulty in cases of this kind is in the application of the rule. In order to do this we must examine the pleadings and decision in the chancery case hereinbefore referred to.

The bill of complaint charged that the ''Supreme Grove of the United Ancient Order of Druids and Frank Negri, * * * wrongfully withdrew from the said Bessemer National Bank all the funds belonging to the plaintiffs and have appropriated the same to their own use.''

The relief prayed for was:

''(b) - That the defendants be required to restore to the plaintiffs the moneys wrongfully taken from the Bessemer National Bank amounting to approximately $1,000. * * *

''(e) That the defendants, and each of them, be required to account for any moneys or property received by them from said Bessemer Grove No. 1 of the United Ancient Order of Druids.''

The decree entered in the chancery suit, which was not modified and from which there was no appeal, reads as follows:

''That said defendants pay to the plaintiffs the sum of $1,144.91, with interest thereon at the rate of five per cent. from the 15th day of December, 1936, for which amount defendants, and each of them, are personally liable for moneys belonging to the plaintiffs wrongfully appropriated by said

defendants; said sum last mentioned aforesaid represents the balance of $1,287 remaining in the hands of the defendants after deducting the following items claimed to have been paid by the defendant, Frank Negri, and which plaintiffs concede may rightfully be deducted, to wit: Charles Ielmini, $51.09; Silvio Brentar, $11; Fabiano Tausco, $20; Italian Lodge, hall rent, $60.''

In the chancery suit the trial court determined that the Supreme Grove and Frank Negri wrongfully appropriated the moneys belonging to plaintiffs. Such a determination was the basis for the decree entered. See *Koontz* v. *Bay Circuit Judge,* 224 Mich. 463. It was also determined that defendants wrongfully possessed money belonging to plaintiffs rather than money belonging to the bank. Otherwise, plaintiffs could not have been defrauded or had a decree entered in their favor. The chancery action was a ratification by plaintiffs of the action of the bank in paying the money to Negri as treasurer of the local lodge. The present action against defendant bank is based upon the theory that the bank has in its possession or should have in its possession certain moneys belonging to plaintiffs. The positions taken by plaintiffs in the chancery and law cases are inconsistent.

It is our opinion that when plaintiffs elected to pursue and charge Negri and the Supreme Grove for money had and received from the bank, plaintiffs elected to affirm the payment made by the bank to Negri. Plaintiffs rely upon *Furlong* v. *Manufacturers National Bank of Detroit,* 285 Mich. 517 (118 A. L. R. 567), in support of their position in this case, but we do not think this case is controlling. In the *Furlong Case* we held that mere acceptance by depositors of partial restitution from a forger does not preclude depositors from recovering the balance

of the defalcation from the bank, especially where the bank was not misled by the acceptance of partial restitution and such action was beneficial to the bank. In that case we said: "The acceptance of restitution from Keller was quite in accord with their (plaintiffs) intent, as expressed in the last paragraph of their letter, to cooperate with defendants (banks) in recovering the loss."

In the case at bar, there was no understanding between plaintiffs and the bank that whatever might be recovered from Negri and the Supreme Grove would be applied upon the claimed indebtedness of the bank. The judgment in the case at bar and the decree in the chancery case are against different parties, but for the same fund. The chancery decree is based upon the theory that Negri and the Supreme Grove have plaintiffs' money. They may not reverse their position and say that the bank has the money or should have it. They have made their election and must abide by it.

The judgment of the circuit court is reversed, without a new trial. Costs to defendant.

BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. MCALLISTER, J., took no part in this decision.