484 P.2d 26

**VAN WATERS & ROGERS, INC., a corporation, Appellant,**

v.

**INTERCHANGE RESOURCES, INC., a corporation, Appellee.**

**No. 1 CA–CIV 1175.**

Court of Appeals of Arizona,
Division 1,
Department B.

April 22, 1971.

Rehearing Denied May 17, 1971.
Review Denied June 8, 1971.

Shimmel, Hill & Bishop by Rouland W. Hill, Phoenix, for appellant.

Standage, Allen & Phelps by Gove L. Allen, Mesa, for appellee.

EUBANK, Judge.

This appeal primarily questions the propriety of the trial court's granting the appellee's summary judgment where there is alleged to be genuine issues as to material facts unsettled.

Appellant raises three questions on appeal. They are as follows:

1. Should the summary judgment be set aside because there remained many genuine issues of material fact?

2. Did Interchange Resources' complaint state a claim upon which relief could be afforded?

3. Upon the record is Van Waters entitled to an order of this court reversing the judgment and directing the entry of a final judgment dismissing the complaint?

## THE SUMMARY JUDGMENT

Viewing the facts and inferences arising therefrom in the light most favorable to the appellant, we find that on March 27, 1963, Paving Rentals, Inc., a paving contractor hereafter referred to as "Paving", in order to obtain interim financing, executed an "Underlying Agreement" with the appellee-plaintiff Interchange Resources, Inc., hereafter referred to as "Interchange", which provided, in part, that Interchange would purchase accounts receivable from Paving. The purchase was to be by assignment of the account to Interchange together with the simultaneous execution of a 90-day promissory note in the amount of the original contract price. Paving was then obligated to repurchase each account within 90 days of the date of purchase and pay Interchange interest at the rate of 8% per annum on the original purchase price. A reserve account was set up by the agreement permitting Interchange to withhold 15% out of the purchase price of each account, " * * * as [its] security for all obligations of client [Paving] * * *." arising from losses under the Underlying Agreement. In addition, Paving agreed to execute all papers required by Interchange, warrant each ac-- count sold, and hold in trust and deliver to Interchange, on the same day as received by Paving, all payments received, in whatever form. In addition Paving executed a guarantee of all accounts assigned to Interchange.

On April 4, 1963, Paving presented its form "Proposal and Contract" to appellant Van Waters & Rogers, Inc., hereafter "Van Waters", offering to level, fill and apply hot asphalt to an area located at 2930 West Osborn Road, Phoenix, for $6,692.49. The offer was accepted by Van Waters and Paving began work on approximately May 8th. The work was completed on May 23, 1963.

Prior to completion of the work, on May 14, 1963, Paving assigned the Van Waters contract, in the sum of $6,692.49, to Interchange and received $5,404.19 for it. This assignment shows on its face that $334.62 was deducted by Interchange as a "factoring charge", or interest, and 15% of the contract price or $953.68 was deducted and credited to the reserve account of the Underlying Agreement as additional security for Interchange. As additional security Paving executed and delivered a 90-day promissory note to Interchange in the contract price of $6,692.49 payable to Interchange.

Interchange notified Van Waters of the assignment of its contract with Paving on May 14, 1963 by sending it a copy of their contract with Paving with a bright yellow sticker attached to the front page stating that it had been assigned to Interchange. Van Waters admits receiving it, together with a letter from Paving on May 25, advising them to make their contract price payment to Interchange at Interchange's post office box in Mesa.

On May 31, 1963, Van Waters made its check payable to Paving in the sum of $6,-717.49 (an additional $25 for ditch work) and delivered the check to Paving. Paving in violation of the "Underlying Agreement" cashed the check, and used the proceeds for its own purposes. No part of the proceeds of the Van Waters' payment went to Interchange.

Turning for a moment to the law of assignments, it is clear that when notice of an assignment is given to and received by the debtor that the debtor becomes liable to pay the assignee and that its subsequent payment to the original obligee-assignor does not relieve it of that liability. Bank of Yuma v. Arrow Construction Co., Ariz., 480 P.2d 338 (1971); United Bank of Arizona v. Romanoski, 14 Ariz.App. 90, 480 P. 2d 1007 (1971).

In our case Paving assigned the Van Waters contract to Interchange for consideration; notice of the assignment was given Van Waters prior to payment being made and then Van Waters disregarded the assignment and paid the assignor—Paving—instead of Interchange. Van Waters, under these circumstances, is still liable to Interchange for the assigned contract price unless any of Van Waters' defense allegations raise a genuine issue as to a material fact.

The legal effect of an assignment of a non-negotiable chose in action is to merely transfer the interest of the assignor to the assignee. The assignee then "stands in the shoes" of the assignor, taking his rights and remedies as described in the assignment, subject to any defenses which the obligor or debtor has against the assignor prior to notice of the assignment. 6 Am. Jur.2d, Assignments, pp. 282–284, § 902, Restatement of Contracts, pp. 211–213, § 167 (1932). In the case at bar, Van Waters' defense is based entirely on a transaction that occurred between Paving and Interchange, subsequent to its receipt of the notice of assignment, hereafter referred to as the "Fleetwood Assignment."

Following the payment by Van Waters to Paving, Interchange became aware of Paving's breach of the Underlying Agreement and requested additional security. This was provided by Paving on July 24, 1963, when it assigned its paving contract with the Fleetwood Construction Corp., in the sum of $14,124.00, to Interchange without additional cost to Interchange. The assignment specifically assigns these proceeds to the reserve account of the Underlying Agreement. In addition, typewritten on the face of the assignment is the following notation:

"This contract has been assigned to Interchange Resources, Inc. by Paving Rentals, Inc. to cover Walter Ong, Bill Goettle, Van Waters, Inc., and Memorial Christian Church Contracts."

Each of these contracts were paving contracts previously assigned to Interchange. According to the affidavit of the president of Paving, submitted by Van Waters, Paving had received the contract price due on these contracts, but it did not pay these funds to Interchange as it was required to do by the Underlying Agreement and assignments. The affidavit continues that the Fleetwood Assignment was then arranged in "satisfaction" of Interchange's claim against Paving. It is from this single conclusion of ultimate fact and law that Van Waters' draws its contention that the "Fleetwood Assignment" constituted a settlement of all claims arising out of Paving's breach of the provisions of the various assignments (including that of Van Waters) and the Underlying Agreement. Disregarding for the moment that such conclusions of fact or law are insufficient to properly raise a defense for the purposes of Rule 56, 16 A.R.S., Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187 (1963), Compton v. National Metals Co., 10 Ariz. App. 366, 459 P.2d 93 (1969), Mr. Carl Priola's (Paving's President) affidavit cannot be read in the manner Van Waters contends.

It is clear from the terms of the affidavit, the Fleetwood Assignment, and the Underlying Agreement, that the "satisfaction" referred to was for Paving to provide a substantial increase in the reserve account in exchange for Interchange's waiver, or "satisfaction", of Paving's breach of contract for its failure to remit immediately all payments received under the various designated assigned contracts to Interchange. This failure involved a breach of a duty flowing from the assignor to the assignee, and it had nothing to do with the debtor—Van Waters. Paving de-

faulted on the Fleetwood contract, consequently, the assignment was worthless. Then, on September 17, 1963, Interchange filed suit against Paving in the Maricopa County Superior Court, No. 154474, based, in part, on the Van Waters assignment. Van Waters was not joined as a party defendant. The claim alleged, generally, that by virtue of their Underlying Agreement, Paving executed a "Guaranty" whereby it " * * * ·guarantee[d] the due payment and performance by said Client [Paving] of all moneys to be paid, and all things to be done, pursuant to each and every condition and covenant contained in said [Underlying] agreement * * *."; that because of the Van Waters' assignment and its non-payment to Interchange within the 90-day period following the date of assignment, Interchange was entitled to damages and attorneys' fees. Default judgment was taken and except for $1,000.00, the judgment, which includes seven assigned paving contracts, remains unsatisfied. Paving subsequently went into bankruptcy.

■■■■ A review of Van Waters' memoranda reveals that it sees this transaction as relieving it of its obligation under the assignment. For example, in its statement of the case contained in the opening brief, Van Waters lists its affirmative defenses raised in its answer to the second amended complaint as: an election of remedies to sue Paving rather than Van Waters; a waiver; payment; Van Waters was an indispensable party to Cause No. 154474, supra, and therefore estopped to bring the case at bar; an accord and satisfaction; Van Waters had not received notice of the assignment until after it had paid Paving; a novation. All of these defenses are based upon the effect of the judgment in Cause No. 154474 on the present case at bar. At no time, however, has Van Waters attempted to establish these defenses upon the basis of personal knowledge as is required by Rule 56(e), Rules of Civil Procedure, 16 A.R.S. See our opinions in Wells-Stewart Construction Co. v. General Ins. Co., 10 Ariz.App. 590, 461 P.2d 98 (1969), Compton v. National Metals Co.,

supra. Failure to do so waives the alleged defenses for our purposes on review. In any regard, reviewing the record, in the light of the parol evidence rule, it is clear that Interchange had rights against Paving under the Underlying Agreement in addition to those rights involved in the Van Waters assignment. Such separate and distinct covenants provide the basis of an action for breach of contract based on the violation of each covenant and the recovery on one will not bar an action for breach of another. 50 C.J.S. Judgments § 675, p. 121. It is our opinion that Interchange's suit against Paving, and the unsatisfied judgment obtained, was a distinct and separate claim arising from the "Fleetwood Assignment" and, absent payment, would not serve to release Van Waters from its legal obligation to Interchange under the original assignment and notice. This question is discussed in more detail hereafter under election of remedies.

Finally, it should be pointed out that the trial court entered only a partial summary judgment, in that it reserved Van Waters' defense of setoff for trial. Our review of the record supports this determination and we affirm it. Restatement of Contracts, Assignments, p. 211, § 167 (1932).

## THE COMPLAINT

■■■■ Van Waters' second question deals with the sufficiency of Interchange's second amended complaint to state a claim upon which any relief could be afforded.

The first contention is that on the basis of A.R.S. § 32–1153 and Hunt v. Douglas Lumber Co., 41 Ariz. 276, 17 P.2d 815 (1933), Interchange must allege and prove that *it* was a registered contractor at the time of the assignment. This contention is without basis. Interchange is not a contractor but the assignee of the proceeds of a paving contract. We read neither authority as precluding a partial assignment of the proceeds of the construction contract for interim finance purposes.

If this action had been brought by Paving against Van Waters for payment of

the contract price it would have been necessary for Paving to comply with A.R.S. § 32–1153 and allege and prove that it was a duly licensed contractor. However, in a case such as the one at bar, where the assignee is suing on an assignment of the proceeds of a construction contract, the issue must be raised by the obligor (Van Waters) as defense matter and in the manner required by Rule 56(e), Rules of Civil Procedure, 16 A.R.S. Here Van Waters did not properly raise the defense for the consideration of the trial court so we must reject this contention. Restatement of Contracts, Assignments, p. 211, § 167 (1932).

█ The second contention is one that was partly treated under summary judgment above—that Interchange was required to make an election of remedies and that by bringing No. 154474 Interchange did so. Relying very strongly on Wilhorn Builders, Inc. v. Cortaro Management Co., 81 Ariz. 381, 307 P.2d 94 (1957), Van Waters states that the complaint on its face shows that Interchange arrived at the place where it should elect to take either of two forks of the road: one to sue Van Waters, the other to sue Paving. When it sued Paving (No. 154474) its choice became irrevocable. We disagree. The Wilhorn case involves a written contract and contest between a vendor and a purchaser. It did not involve the assignee of the proceeds due the vendor under the original contract. Further, the case involves the construction of express contract provisions which gave the vendor two substantive rights in the event of default: to forfeit and terminate the contract, or to enforce the contract by specific performance. The Court held that in such a circumstance, where the vendor brings an action to recover the purchase money installments due and owing, that by that act the vendor has made a conclusive election under the contract and is estopped to change his position and seek forfeiture instead. Such is not the case at bar. Here we have the assignee Interchange pursuing separate and different remedies against different parties to different contractual

relationships: Interchange sues Van Waters on the written assignment; it sues Paving for damages on its guarantee of accounts under the Underlying Agreement. Election of Remedies is not involved where different contracts, covenants and legal relationships exist such as are present here. See Restatement of Contracts, Election of Remedies, p. 712, § 381 (1932). See also Grant v. Harner, 29 Ariz. 41, 43, 239 P. 296 (1925), for a description of the several contractual relationships created by assignment. See Am.Jur.2d, Assignments, p. 291, § 109.

█ The last two arguments by Van Waters are make-weight in nature. The first deals with the sufficiency of the assignment alleged in the second amended complaint, while the second deals with the allegation that Interchange should have joined Van Waters in the action No. 154474 as they were joint obligors. Both allegations are without substance. In our opinion the second amended complaint sufficiently alleges the assigment of the proceeds of the Van Waters Paving contract, and the obligations and duties created by the assignment were not joint duties and obligations, as already has been demonstrated. See Valley National Bank v. Byrne, 101 Ariz. 363, 419 P.2d 720 (1966).

The final question on appeal argues that on the record Van Waters is entitled to judgment reversing the partial summary judgment and directing the entry of judgment for Van Waters. In support of this contention, Van Waters reasserts almost all of its arguments discussed above. For the reasons already stated we reach the contrary conclusion.

The "final judgment" (partial summary judgment) of the trial court is affirmed and the case is remanded for further proceedings on the one issue remaining: Van Waters' setoff, if any, against the final judgment.

JACOBSON, P. J., and HAIRE, J., concur.