543 P.2d 123

HENNESY EQUIPMENT SALES CO., an Arizona Corporation, and Hennesy Industrial Equipment Sales Company, an Arizona Corporation, Appellants,

v.

The VALLEY NATIONAL BANK et al., Appellees.

No. 1 CA–CIV 2485.

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 2, 1975.

Rehearing Denied Jan. 22, 1976.

Review Denied Feb. 18, 1976.

Cavness & DeRose by Marc C. Cavness, Phoenix, for appellants.

Rawlins, Ellis, Burrus & Kiewit by Chester J. Peterson, Phoenix, for appellees.

## OPINION

JACOBSON, Presiding Judge.

We are asked to determine in this appeal whether a suit by an employer against a forger employee precludes a subsequent action against the drawee bank on the grounds of election of remedies.

The operative facts giving rise to summary judgment in favor of appellee, Valley National Bank (Bank) are not in dispute. Between May 1, 1970, and February 19, 1971, the appellants, Hennesy Equipment Sales Co. and Hennesy Industrial Equipment Sales Co. (Hennesy) employed Mary

L. Martin as a bookkeeper. While employed in this capacity, she forged checks drawn on Hennesy's bank accounts at the Bank and pocketed the proceeds. Hennesy became aware of Martin's defalcation late in January, 1971, and terminated her employment early in February. On February 25, 1971, Hennesy instituted suit against her, obtained a judgment and subsequently obtained a partial satisfaction of that judgment.

On June 8, 1971, Hennesy filed a complaint against the Bank seeking to recover the balance of their losses, alleging "unauthorized deductions" from their accounts by the Bank. The Bank answered, raising several affirmative defenses and after discovering the prior litigation and judgment against Martin, moved for summary judgment on the grounds that Hennesy had made an election of remedies by pursuing the suit against Martin to judgment. The trial court granted the Bank's motion and Hennesy has appealed.

■ The doctrine of election of remedies is to the effect that the choice of one among two or more available but inconsistent remedies bars recourse to the others. 116 A.L.R. 601; 28 C.J.S. Election of Remedies, §§ 1 and 3. The doctrine has relative ease of application where the remedies are sought to be enforced against the same person. For example, a person who has been fraudulently induced to enter into a contract may sue for damages under that contract or may sue to rescind that contract, but cannot do both—one act being an affirmance of the contract, the other being a disavowal of the contract—an inconsistency giving rise to the doctrine of election of remedies. *See Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969).

■ However, the doctrine is more difficult to apply when the remedies sought to be enforced are against different persons. In order to analyze the doctrine under these circumstances, it is important to keep in mind that "remedy" as used in the doctrine is really a misnomer as pointed out by Justice Cardozo in *Schenck v. State Line Telephone Co.*, 238 N.Y. 308, 312, 144 N.E. 592, 593 (1924): "Often what is spoken of in opinions as a choice between remedies is in reality a choice of 'an alternative substantive right'." Thus, strictly speaking, the question of an election of remedies can only arise after there has been an election between alternative and inconsistent substantive rights, the decisive act constituting that election being the pursuit of a particular remedy.

Again, as pointed out by Justice Cardozo, in those cases involving the defense of election of remedies between different persons, "it is probable that some element either of ratification or of estoppel is at the root of most cases, if not all, in which an election of remedies, once made, is viewed as a finality." *Schenck v. State Line Telephone Co.*, 238 N.Y. at 312, 144 N.E. at 593.

■ It would therefore appear that a plaintiff who has alternative substantive rights against two persons and by pursuing a substantive right against one person, that pursuit acts as a ratification of the wrongful act of the other, the plaintiff is precluded from subsequently pursuing his remedy against the wrongdoer whose act was ratified. For example, bringing an action on a contract entered into by an agent's unauthorized acts would preclude a subsequent action against that agent for his unauthorized act—seeking benefits under the unauthorized contract being a ratification of that contract and therefore the agent's unauthorized act.

It is on this basis that a majority of American cases hold that suit to judgment against the forger precludes a subsequent action against the drawee bank. As stated in 83 Banking Law Journal, at 672:

"The election of remedies theory is an extension of the familiar rule accepted in many jurisdictions that when payment has been made on a forged check, the depositor can pursue two remedies based on alternative rights: (1) a demand for

the money can be made against the bank on the theory that the bank paid out its own money and not that of the depositor, or (2) a demand can be made against the forger on the theory that he converted the depositor's money, in which case *the depositor impliedly ratifies the action of the bank in making payment to the forger."* (emphasis added)

Also *see, Ielmini v. Bessemer Nat. Bank,* 298 Mich. 59, 298 N.W. 404 (1941); *Mace v. Rockland County Trust Co.,* 249 App. Div. 754, 291 N.Y.S. 835 (1936); Annot., Bank Paying Deposit—Election of Remedies, 144 A.L.R. 1440.

The so-called "inconsistent remedies" have been stated in 9 C.J.S., Banks and Banking § 356 at 752 to be:

"A plaintiff who sues a drawee bank on a check paid by it on a forged indorsement takes the position that the bank still has his money, that the money paid out by the bank was the bank's money, and that such payment was not binding on plaintiff; and, where he sues another who has indorsed such check over to the drawee bank, he necessarily takes the position that the money paid by the drawee bank was wrongfully paid and, therefore, wrongfully detained. Such positions are mutually contradictory, and in choosing his remedies plaintiff cannot adopt both positions."

It would appear then that the majority of cases which admittedly hold that a victim of a forged check has an irrevocable election of remedies, do so on the theory that his cause of action against the bank is based on the assumption that the bank paid out its money and the suit against the forger is on the theory that the forger has the victim's money thereby ratifying the wrongful payment by the bank. In our opinion, such reasoning is too glib.

The relationship between the bank and its checking account depositor is that of debtor and creditor, the deposit being a loan to the bank without interest, and the money so deposited belongs to the bank. *Valley National Bank v. Witter,* 58 Ariz. 491, 121 P.2d 414 (1942); *Davies & Vincent v. Bank of Commerce,* 27 Ariz. 276, 232 P. 880 (1925). It is therefore somewhat fallacious to speak in terms of the bank paying its money or the depositor's money, all the money as such belongs to the bank and the bank is merely discharging its debt to the depositor, pro tanto, by payment of the depositor's checks. *V. H. Juerling & Sons, Inc. v. First National Bank,* 143 Ind.App. 671, 242 N.E.2d 111 (1968). Implied in this debtor-creditor relationship is the contractual undertaking on the part of the bank that it will only discharge its obligation to the depositor upon the authorized signature of the depositor. *Neal v. First National Bank,* 26 Ind.App. 503, 60 N.E. 164 (1901).

Upon analysis then, the depositor's cause of action against the bank for payment of a forged check is based upon a breach of the Bank's contractual obligation to satisfy its debt only upon the authorized signature of the depositor—in essence, to re-establish the credit balance enjoyed by the depositor prior to the debit to that balance of the forged instrument.

Looking to the liability of the forger, the basis of the bank's cause of action against the forger is clear—either conversion of the Bank's money; money had and received, or fraud. On the other hand, the basis of the depositor's cause of action against the forger is not that clear. The traditional view is that it is based upon conversion of the depositor's money or money had and received. In order, however, to make the money received by the forger the depositor's money, a legal fiction has to be created; that is, saying the forger now has the depositor's money by the depositor ratifying the bank's wrongful act of honoring the check. That it is a legal fiction is obvious from our previous discussion—the actual money received from the bank is always the bank's money, merely the bank's debt is satisfied by the payment. Moreover, acts giving rise to an implied ratification usually denote a benefit being bestowed on the

ratifier. What benefit, other than the right to maintain the action, is bestowed on the depositor by the forger's wrongful act? There simply is none. Also, the very act of bringing suit against the forger by the depositor is not a ratification of the payment of money, but a disavowal of the forger's act and the statement by the depositor that the forger is a wrongdoer.

What then is the harm suffered by the depositor at the hands of the forger that really is the basis of the cause of action? It appears to us that the forger's wrongful act causes two harms—one to the bank for fraudulently inducing it to relinquish its money and one to the depositor by wrongfully causing his bank account to be debited.

 Aside from dictates of public policy which should subject a forger to as many legal actions as the law could devise, it would appear that the only harm caused the depositor is the wrongful interference with its contractual debtor-creditor relationship with the bank—a tort. When viewed in this light, we see no inconsistency in substantive rights by pursuing one party (the bank) who breaches its contractual obligation and also pursuing another party (the forger) who wrongfully interferes with that contractual relationship. Two wrongs have been done the depositor and he should not be precluded from pursuing two consistent substantive rights arising from these harms. This does not mean, however, that two recoveries can be had. The depositor has suffered only one damage—the loss of his credit with the bank. When that damage has been satisfied, either by being made whole by the forger or by the bank, the depositor can collect no more. In this regard, the suit by the depositor against the forger is to the bank's benefit for any recovery against tne forger reduces the liability of the bank.

We therefore hold that the substantive rights a depositor holds against a forger who fraudulently induces a bank to debit the depositor's account are not inconsistent with any substantive rights that depositor may have against the bank for wrongfully debiting the account. Hence the doctrine of election of remedies is not applicable and we specifically reject the majority view.

Since this matter came to us solely on the Valley National Bank's defense of election of remedies, which we have held inapplicable, the judgment of the trial court is reversed and the matter remanded for trial on the Bank's defenses raised by its answer.

HAIRE, Chief Judge, Division 1, concurs.

EUBANK, Judge (concurring).

While I concur with the majority opinion, I believe that additional emphasis on the specific arguments raised needs further discussion in light of the Uniform Commercial Code. The following is therefore presented.

In the appellants' brief, they first point to the general rule that a bank is liable to its depositor if it pays out money on the forged name of the depositor, citing 10 Am.Jur.2d *Banks* § 603 (1963), and then cite *Pacific Coast Cheese, Inc. v. Security First National Bank of Los Angeles,* 45 Cal.2d 75, 286 P.2d 353 (1955), as determinative of the "election of remedies" question in their favor. In Cheese the facts were similar to the case at bar, except that the depositor's signature was valid while the amount of the check was altered. The Cheese (depositor) manager, upon discovery of the defalcation, filed a criminal complaint and then a civil action against the bookkeeper, obtaining judgment for the full amount taken. The judgment was not satisfied, and Cheese (depositor) then brought an action against the bank on the basis that the bank had "improperly deducted" deposited funds from its account. The California Supreme Court reversed the trial court's directed verdict in favor

of the bank and in the process discounted the "election of remedies" defense stating:

> The directed verdict cannot be justified, as contended by defendant, on the theory that plaintiff is barred under the doctrine of election of remedies by reason of the recovery of judgment against the bookkeeper for damages resulting from alteration of the checks. The doctrine is based on estoppel and, when applicable, operates only if the party asserting it has been injured. See *Steiner v. Rowley*, 35 Cal.2d 713, 720, 221 P.2d 9; *Commercial Centre Realty Co. v. Superior Court*, 7 Cal.2d 121, 129, 59 P.2d 978, 107 A.L.R. 714; *Campanella v. Campanella*, 204 Cal. 515, 521, 269 P. 433; *Mansfield v. Pickwick Stages*, 191 Cal. 129, 131, 215 P. 389; *Hines v. Ward*, 121 Cal. 115, 120–121, 53 P. 427; *Perkins v. Benguet Consol. Min. Co.*, 55 Cal.App.2d 720, 758, 132 P.2d 70. Here the evidence does not show as a matter of law that defendant was in any way injured or prejudiced by plaintiff's action against the bookkeeper. (45 Cal.2d at 80, 286 P.2d at 356).

Cheese was cited as authority by our Supreme Court in *Valley National Bank of Phoeniz v. Electrical District Number Four*, 90 Ariz. 306, 318, 367 P.2d 655, 663 (1961), on the negligence-estoppel issue but without reference to the "election" question.

The appellee-bank counters this argument by stating that Cheese represents the minority view and Arizona represents the majority view, citing *Dowdy v. Calvi*, 14 Ariz. 148, 125 P. 873 (1912). The exact basis for this conclusion is not analyzed by the bank, except by reference to Annot., 6 A.L.R.2d 10 (1949), entitled "Conclusive Election of Remedies as Predicated of [sic] Commencement of Action, or its Prosecution Short of Judgment on the Merits." The annotation states:

> In *Dowdy v. Calvi* (1912) 14 Ariz. 148, 125 P. 873, it was stated that "an-

other suit pending in the same or other court between the same parties involving the same subject of action, pursuing the same or a different remedy for relief, upon application made, cannot stand together"; that "the suit first commenced, in point of time, controls, and, when the remedies are inconsistent, such prior suit is an election of remedy and prevails": and that "a subsequently commenced action between the same parties, for the same cause of action, seeking a different relief, will abate even though the prior action has been dismissed, because the plaintiff elected his remedy and cannot have two remedies for the same wrong." (6 A.L.R.2d at 30–31).

The annotator reads a good deal into the Dowdy case that I do not find there. First, the court found that it was *not* an "election of remedies" case; second, all of the court's discussion regarding "election of remedies" was dicta; third, the general statement of the law regarding "election of remedies" is correct if, as a precondition, all of the factors are the same, i. e., same parties, same subject matter, etc. Our Supreme Court did not hold that the mere filing was conclusive. This annotation merely points up the primary point at which analysis of the "election" must begin: Are the appellants pursuing the same or different remedies for relief in this action?

Referring to the case at bar, my reading of the amended complaint against the bookkeeper in the first action, shows that it was framed as "money had and received," while the action against the bank is based on A.R.S. §§ 44–2541 [U.C.C. § 3–404, Unauthorized signatures], 44–2543 [U.C.C. § 3–406, Negligence contributing to alteration or unauthorized signature], 44–2632 [U.C.C. § 4–406, Customer's duty to discover and report unauthorized signature or alteration], and the deposit contract. *See* Comment, "Check Forgeries: Variations of Rules of Liability Based on Fault—U.C.C. Defense Sections 3–406 and 4–406," 12 *Ariz.L.Rev.* 417 (1970); White

& Summers, *Uniform Commercial Code* § 17–2 (1972). In my opinion these are different remedies against different parties making the "election of remedies" defense inapplicable to this action as a matter of law. *See Van Waters & Rogers, Inc. v. Interchange Resources, Inc.*, 14 Ariz.App. 414, 484 P.2d 26 (1971). Further, I believe the Cheese solution to the election of remedies question is compatible with the Uniform Commercial Code remedies which are now the law in Arizona. *See* Comment, "Check Forgeries," *supra*.

Appellee, however, argues that what occurred was a form of "ratification" and cites A.R.S. § 44–2541 [1] as authority. When A.R.S. § 44–2541 is read with A.R.S. § 44–2540 [2] [U.C.C. § 3–403, Signature by authorized representative], the result raises a genuine issue as to a material fact, as do the appellee's affirmative defenses based on negligence, referred to above, which together preclude the disposition of this matter by summary judgment.

I concur in the result that summary judgment was not proper under these circumstances and that this matter must be reversed and remanded to the trial court for further action not inconsistent with this opinion.

1. Unauthorized signatures
    A. Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.
    B. Any unauthorized signature may be ratified for all purposes of this article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer.

2. Signature by authorized representative
    A. A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

B. An authorized representative who signs his own name to an instrument:
    1. Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
    2. Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.
    C. Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.